**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHARLES ELLERT, TOSIN ADESINA
AARON DOMBECK, GEORGE
DOUKAS AND CHAD WHITAKER,

      Plaintiffs,

v.                                                                Case No. 6:25-CV-1588-JSS-DCI

YAMAHA MOTOR CORPORATION, USA

      Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS (ECF NO. 33)[1]**

Plaintiffs, CHARLES ELLERT ("Ellert"), TOSIN ADESKINA, AARON DOMBECK,

GEORGE DOUKAS, AND CHAD WHITAKER, on behalf of themselves and all those similarly

situated, by and through their undersigned counsel, hereby file this Response in Opposition to

---

[1] As discussed *infra*, eight days after filing the instant motion with this Court, outside of the record of this case, Yamaha, through its counsel, shipped Plaintiff Ellert's counsel a battery "end cap" with a letter asserting that by receiving "the battery end cap, Mr. Ellert has now received everything to which he claims he is entitled under the promotion . . . He thus lacks standing to continue pursuing any claims in this action." (Composite Exhibit "A") (citations omitted). This is a classic "pick off" maneuver. *See e.g., Sos v. State Farm Mut. Auto. Ins. Co.,* No. 21-11769, 2023 WL 5608014, at *13 (11th Cir. Aug. 30, 2023) (discussing the so-called "picking off" exception to the general class action mootness rule and how State Farm's "pick-off strategy" seemed inconsistent with class action principles). Given this out-of-court conduct and as discussed *infra*, Plaintiff Ellert contends Yamaha's conduct is tantamount to a confession of judgement as to his claims. *See e.g., Clifton v. United Casualty Insurance Co. of America*, 31 So.3d 826, 831 (Fla. Dist. Ct. App. 2010). ("[W]hen an insurer pays additional policy proceeds after suit is filed, 'it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is ... the functional equivalent of a confession of judgment....' ")); *see also Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So.2d 217, 218 (Fla.1983) (finding payment of the claim to be the "functional equivalent of a confession of judgment"); *Ivey v. Allstate Ins. Co.*, 774 So.2d 679, 684–85 (Fla.2000) (same). Thus, for judicial efficiency, Plaintiffs Adesina, Dombeck, Doukas and Whitaker contend dismissal of their claims without prejudice to re-file a separate action *may* be appropriate if this Court finds Ellert is entitled to a judgment against Yamaha for his claims and attorneys' fees. Accordingly, this Response mainly focuses on Yamaha's Fed. R. Civ. P. 12(b)(6) arguments.

Defendant, YAMAHA MOTOR CORPORATION, U.S.A.'s ("Yamaha"), Motion to Dismiss (ECF 33), and in support thereof states:

## I.  Introduction and Summary of Issues

Yamaha's litigation strategy appears to be an extension of its prelitigation practice of providing wildly inconsistent positions as to its free promotions. *See e.g.*, (ECF No. 1) (hereinafter "Compl." ¶¶ at 5, 42-52). Initially, Plaintiffs allege that Yamaha failed to deliver on its promise to customers that they would receive both "a free 2nd battery and battery end cap ($1,400.00 value)" – defined collectively by Plaintiffs as Yamaha's "Free 2nd Battery"[2] promotion. On this point, Plaintiffs specifically allege that the battery end cap "is necessary to utilize the battery in the E-Bike[.]" Compl. at ¶ 60.[3]  Thus, while Plaintiffs Ellert and Adesina received batteries prior to filing this lawsuit, the batteries were functionally useless without the end caps. Compl. at ¶¶ 60, 69.

Yamaha argues, however, that the missing part is just "a small plastic end cap" and is "likely" duplicative of the end cap Plaintiffs received with the original battery. *See* (ECF No. 33, pp. 2, 4, 14-15). Yamaha, thus, erroneously concludes that Plaintiff Ellert's claims[4] should be dismissed because, despite not receiving the promised and required end cap, his receipt of the *battery* equates to there being no injury to support his claims. *Id.*  Yet, only a few days after filing the instant Motion where it to attempts to minimize the importance and necessity of the end cap to the Free 2nd Battery promotion, Yamaha mailed Plaintiffs' counsel a brand new end cap, obtained from China, to make the out-of-court argument that Plaintiff Ellert's claims are now allegedly

---

[2] Yamaha appears to curiously interpret certain uses of the capitalized term "Free 2nd Battery" in Plaintiffs' Complaint to refer to only a battery. This argument is due to be rejected out of hand.

[3] *See also* https://www.batteryskills.com/what-is-battery-terminal-cap/ (last visited December 1, 2025) (discussing how a battery end cap plays a crucial role in protecting the battery's terminals and enhancing safety and, while often overlooked, how the small accessory delivers multiple protective and operational benefits).

[4] Again, as part of a clear two-front, pick-off strategy to remove jurisdiction in this Florida court, Yamaha directs its arguments and out-of-court conduct primarily at Plaintiff Ellert.

moot, requiring his dismissal (and, as a consequence, dismissal of all the class claims). *See* Composite Exhibit A. However, as discussed herein, it cannot be disputed that Yamaha's failure to deliver the promised end cap to Ellert and Adesina prior to the filing of this case is sufficient to state each of Ellert's and Adesina's claims (as well as the claims of Plaintiffs who received no battery and/or end cap). Accordingly, an order denying Yamaha's motion to dismiss arguments pursuant to Fed. R. Civ. P. 12(b)(6) is due to be denied, with the Court deferring ruling on Yamaha's Fed. R. Civ. P. 12(b)(2) arguments until the issue of Yamaha's tender of an end cap to Plaintiffs' counsel for only Plaintiff Ellert[5] is resolved by this Court.

**Relevant Complaint Allegations and Yamaha's Outside the Record Conduct**

Plaintiffs allege that, beginning in December 2023, Yamaha began advertising its Free 2nd Battery promotion. Compl. at ¶ 1. The promotion promised customers that they would receive both "a free 2nd battery and battery end cap ($1,400.00 value)" when they made a qualifying purchase. *Id*. at ¶ 2. Over time, Yamaha gave varying and wildly inconsistent responses to purchasers complaining about Yamaha not delivering on its promotional promises; this included occasional representations that supplies had been depleted and were no longer available. *Id*. at ¶¶ 5, 42-52.

In September 2024, Plaintiff Ellert became aware of the Free 2nd Battery promotion. Compl. at ¶ 53. Prior to purchasing a qualifying E-Bike, Ellert reviewed the Free 2nd Battery promotion on Yamaha's website, including Yamaha's representation that if a customer bought a Wabash RT model E-Bike, then "a free second battery and battery end cap ($1,400 value) will be shipped directly to the registered owners at no additional charge." *Id.* at ¶ 55. After viewing the foregoing promotional offer and in reliance thereon, Ellert purchased the Wabash RT, which was delivered

---

[5] Through transparent gamesmanship, Yamaha's counsel mailed an end cap for only Mr. Ellert (a Florida resident), even though Plaintiff Adesina (from New York) also requires just an end cap.

on October 26, 2024, and he subsequently registered it with Yamaha, on or about November 8, 2024. *Id*. at ¶¶ 57-58. He would not have purchased the E-Bike if Yamaha did not promise to provide him with the Free 2nd Battery. *Id.* at ¶ 59. While Yamaha did at least finally send him a second battery, before this suit was filed, Yamaha did <u>not</u> send him the battery end cap, which is necessary to utilize the Free 2nd Battery in the E-Bike. *Id*. at ¶ 60.[6]

In its motion to dismiss, Yamaha primarily targets Plaintiff Ellert's claims based on Yamaha's litigation strategy to attempt to remove any potential jurisdiction of this class action case in this court. Deceivingly, Yamaha disregards that the Complaint defines both the battery <u>and</u> end cap collectively as the "Free 2nd Battery" and, instead, baselessly infers that certain references to that capitalized term do not include the end cap. *See* (ECF No. 33 at p. 13) (arguing Plaintiff Ellert lacks an injury because he "already received a battery"). As noted *supra*, Yamaha also argues in its November 5, 2025, filing that Plaintiff Ellert should not be perceived to have an injury because an end cap would have been included with the "original bike." *Id*. at pp. 14-15.

Then, eight days after Yamaha filed its papers in this Court, Yamaha's counsel mailed from its California office, after apparently being in contact with Yamaha, an "END CAP" from China – per the Country of Origin (or COO) notation on the label (Composite Exhibit A):



---

[6] As also reflected in the Comp. at ¶¶ 62-70 (Plaintiff Adesina), ¶¶ 71-79 (Plaintiff Dombeck), ¶¶ 80-88 (Plaintiff Doukas), ¶¶ 89-¶¶ 98 (Plaintiff Whitaker), all Plaintiffs were deceived by Yamaha.

And, while Yamaha tracks "discussions with plaintiffs' counsel" in its motion (ECF No. 33 at pp. 10) to outline anticipated arguments against broad dismissal of all claims for jurisdictional reasons, Yamaha's papers fail to disclose that, in the same "discussions," Yamaha's counsel previewed Yamaha's "pick off" attempt of Plaintiff Ellert. *See supra* a fn 1. Yamaha also fails to alert this Court that, after its filing, it intended to mail an end cap with a cover letter from Yamaha's counsel to Plaintiffs' counsel, dated November 13, 2025, which would state:

> Counsel,
>
> As discussed on the call between counsel for the parties on November 3, 2025, we are sending along with this letter a battery end cap for your client, Charles Ellert (Yamaha Part No. X2U-F3438-00-0Z). By providing this end cap, Defendant Yamaha Motor Corporation, U.S.A. does not concede the validity of any allegations or claims made in the complaint and reserves all rights.
>
> At the same time, by providing the battery end cap, Mr. Ellert has now received everything to which he claims he is entitled under the promotion he alleges qualifying for in the complaint. He thus lacks standing to continue pursuing any claims in this action. *See, e.g., Dawkins v. Publix Super Markets, Inc.*, 2025 WL 2739035, at *4 (S.D. Fla. Aug. 15, 2025) (dismissing claims and holding that an offer of full relief by the defendant "moots any economic injury Plaintiff suffered"); *Perez v. Scotts Co. LLC*, 2024 WL 5219736, at *3 (S.D. Fla. Nov. 15, 2024) (similar); *Fields v. Walmart Inc.*, 2024 WL 1984586, at *2 (M.D. Fla. Apr. 8, 2024) (similar). Please let us know whether Mr. Ellert intends to dismiss his claims now that he has received the end cap, and if not, on what basis he intends to continue claiming an injury.

After Plaintiffs' counsel alerted Yamaha's counsel, in response, that the mailed end cap had been sent without Plaintiff Ellert's consent, cannot be considered a resolution of the case, and was a concession that "supplies still last" despite Yamaha's prior representations, Yamaha's counsel asserted further arguments, on November 17, 2025, outside of this case's record:

> I'm writing to say a little more about the end cap. Mr. Ellert alleges that the only thing he was expecting but didn't receive was an end cap. He now has an end cap, which is in your custody as his lawyers. It's not clear to us why he would reject the end cap now, given that his whole lawsuit is premised on the idea that he wants but didn't receive an end cap. And the case law makes plain that Mr. Ellert can't manufacture a federal case by rejecting exactly the kind of relief he says would be

5

needed to make him whole. *See, e.g., Hardy v. Bed Bath & Beyond, Inc.*, 2018 WL 1272687, at \*2 (S.D. Fla. Mar. 9, 2018) (no standing after plaintiff rejected refund offer); *Perez v. Scotts Co. LLC*, 2024 WL 5219736, at \*4 (S.D. Fla. Nov. 15, 2024) (holding plaintiff's claims moot in light of refund offer, notwithstanding broader demands in pre-suit litigation letter); *Hamilton v. Gen. Mills, Inc.*, 2016 WL 4060310, at \*5 (D. Or. July 27, 2016) (cited by *Hardy* and *Perez* and holding that consumer's claims were moot after he rejected refund offer). Because the "the only injury [Mr. Ellert] actually alleges"—lack of an end cap—has now been remedied, his claims are moot, and he does not have "standing to proceed." *Hardy*, 2018 WL 1272687, at \*2.

Whatever Mr. Ellert chooses to do with the end cap he now has is up to him. He can use it with the free battery he received or not. But sending the end cap back to us at this point wouldn't change the fact that Yamaha gave him what he says he was entitled to; it would just incur more shipping fees.

(Composite Exhibit B).

Clearly, Yamaha's "pick off" strategy and outside the record conduct evidences that, despite Yamaha's motion to dismiss arguments, Yamaha knows the end cap is critical to the functionality of the battery used in its E-bikes and that each of the Plaintiffs, here, have suffered an injury sufficient to support the requested claims for relief, whether they received only a second battery and no end cap, or neither. Consequently, Yamaha's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is due to be denied, with this Court deferring on Yamaha's 12(b)(2) arguments until after the Court can consider whether Yamaha's out-of-court conduct to offer Plaintiff Ellert an end cap amounts to a confession of judgment or supports a judgment against Yamaha and in Plaintiff Ellert's favor.

## II.  Applicable Legal Standards

Under Fed. R. Civ. P. 12(b)(6), courts must accept the factual allegations in a complaint as true, construing them in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Pielage v. McConnel*, 516 F. 3d 1282, 1284 (11th Cir. 2008). A claim has facial plausibility when the plaintiff

6

pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *75 Acres, LLC v Miami-Dade Cty., Fla.*, 338 F. 3d 1288, 1293 (11th Cir. 2003) (citation omitted).

Regarding Yamaha's "pick off" attempt of Plaintiff Ellert, the US Supreme Court "has reasoned that allowing a class's claims to 'be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions.'" *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *1 (11th Cir. Aug. 30, 2023) (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Indeed, the Eleventh Circuit recently "explained that a contrary rule would give defendants 'the option to preclude a viable class action from ever reaching the certification stage,' which is 'precisely what the [Supreme Court] condemns.'" *Id*. (citing *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1050 (5th Cir. 1981)). The Eleventh Circuit further noted that:

> interim developments that moot a claim for damages do not necessarily moot a claim for attorney's fees. . . .
>
> It is well established, to be sure, that an outstanding claim for attorney's fees cannot revive otherwise moot claims on the merits. *E.g.*, *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93 n.3 (11th Cir. 2022). But the inverse is also true: the mootness of a plaintiff's merits claims does not moot his unresolved claim for attorney's fees. "[A] controversy over attorneys' fees remains viable on its own"— it just cannot "give life to any other mooted dispute." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1124 n.11 (10th Cir. 2016); *see Goldin v. Bartholow*, 166 F.3d 710, 721 n.13 (5th Cir. 1999) ("[M]ootness of the underlying action does not moot a controversy over attorney's fees already incurred. In such cases, both parties retain an interest in recovering or retaining the fees even after losing such interest in the underlying action." (citation omitted)); *accord Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1511 (10th Cir. 1990); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 452 (1st Cir. 2009).

7

*Id*. at \*9 (citing, *inter alia*, *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("reject[ing] respondents' theory that the mootness of a 'primary' claim requires a conclusion that all 'secondary' claims are moot")).

### III.    Argument and Memorandum of Law

**A. Ellert and Plaintiffs Sufficiently Allege Damages and Violations of Consumer Fraud Claims (Count I, II, III IV, and V), Breach of Contract (Count VI), Breach of Implied Covenant of Fair Dealing (Count VII) and Unjust Enrichment (Count VIII).**

Yamaha's primary 12(b)(6) argument is that Ellert's claims fail[7] because "he has not suffered any injury because he already received a battery" and, despite alleging that he did not receive the promised battery end cap, Ellert does not allege if the "plastic end cap has anything more than nominal value." (ECF No. 33, pp. 33-34). As to the end cap's value and whether Ellert suffered any injury by not receiving it, to dispatch this argument, the Court need not look any further than Yamaha's own representation in the Free 2nd Battery promotion.

Yamaha clearly states in the Free 2nd Battery promotion that customers would receive "a free 2nd battery <u>and</u> battery end cap ($1,400.00 value)…" (emphasis added). Yamaha itself values the combined battery and end cap *together* at $1,400.00; not just the battery itself. Presumably, that is because the battery end cap "is necessary to utilize the battery in the E-Bike," as Ellert alleges. Compl. at ¶ 60. In other words, without the end cap, the battery is not usable with the E-Bike, rendering the battery functionally worthless for the purpose for which it was bought and is, therefore, tantamount to having not received the battery at all.

Additionally, despite its contrary conduct outside of this case's record to ship Plaintiff

---

[7] Because Yamaha argues at fn 2 of its motion (ECF No. 33 at p. 13) that each Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the arguments Yamaha directs at Plaintiff Ellert "apply with equal or greater force," to the other named Plaintiffs, references to Plaintiff Ellert's claims should be viewed as if being stated for all Plaintiffs equally.

Ellert an end cap through his counsel, Yamaha attempts to diminish Ellert's allegation that the end cap is necessary as being "vague." However, there is nothing vague about it. Necessary is necessary. "Necessary" is why Yamaha included the end cap in the Free 2nd Battery promotion and as part of the combined $1,400 value. It is also presumably why Yamaha argues outside of this Court's record that Yamaha's delivery of the end cap to Plaintiff Ellert's counsel serves to "moot" his claims for damages since "Mr. Ellert has now received everything to which he claims he is entitled under the promotion he alleges qualifying for in the complaint [and] thus lacks standing to continue pursuing any claims in this action." Composite Exhibit B, *supra*, at pp. 5-6.

Contrary to Yamaha's motion, Mr. Ellert expected to receive both a battery <u>and</u> end cap before being forced to find counsel and file suit, as promised by Yamaha but not delivered. Moreover, having been forced to file suit, as part of his claims, including pursuant to Florida's Unfair and Deceptive Trade Practices Act, Plaintiff asserted a right to recover "reasonable attorneys' fees and costs to counsel[.]" Compl. at ¶127, WHEREFORE Clause. As observed by the Eleventh Circuit in *Sos*, a defendant's failure to pay "attorneys' fees in accordance with the [applicable] fee-shifting statute" as part of "pick off" efforts can amount to a failure to fully destroy standing and mootness of the claims. 2023 WL 5608014, at *5. Such is the case, here.

### B. Plaintiffs Properly Plead Breach of the Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment in the Alternative.

"Federal Rules of Civil Procedure 8(a) and 8(d)(2) specifically authorize a plaintiff to plead causes of action in the alternative." *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla 2013); *see also McKeon v. Dunckner*, No. 6:22-CV-1067-PGB-RMN, 2023 WL 5804196, at *5 (M.D. Fla. Aug. 15, 2023) ("Because Defendant has challenged the validity of the parties' purported contract, Plaintiff is within his rights to raise his unjust enrichment claim.").. Accordingly, in this action, Ellert and Plaintiffs plead their breach of implied covenant and unjust

enrichment claims in the alternative.

As for unjust enrichment, under Florida law, a party may plead in the alternative for relief under an express contract and for unjust enrichment. *Martorella,* 931 F. Supp. At 1228. Recognizing this basic rule, Yamaha notes that unjust enrichment may only be pled in the alternative where one of the parties asserts that the contract governing the dispute is invalid. (ECF No. 33 at p. 16). Yamaha then reasons that because Ellert *asserts* the existence of an express contract, he cannot plead unjust enrichment. *Id.* But this misapprehends the rule. First, Ellert's pleading is only an allegation at this point. *Martorella*, 931 F. Supp. 2d at 1228 ("it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that unjust enrichment fails"). Second, Yamaha has not answered the Complaint or otherwise admitted the existence of a contract; Yamaha certainly does not admit this in its Motion. Thus, at this juncture, the existence of an express contract is undetermined, and Ellert properly pleads unjust enrichment in the alternative. *Id.* ("until an express contract is proven, a motion to dismiss for unjust enrichment on these grounds is premature").

Yamaha's reliance on *Pop v. Lulifama.com LLC*, 2024 WL 1194485, * (M.D. Fla. March 20, 2024) is also misplaced. *Pop* does not stand for the proposition that an unjust enrichment claim cannot be maintained alongside a FDUTPA claim, as Yamaha suggests. Rather, *Pop* merely states that an unjust enrichment claim cannot be based upon a wrong committed by a defendant. *Pop v. Lulifama.com LLC*, 2024 WL 1194485, *7 (M.D. Fla. March 20, 2024). Unlike the claim in *Pop*, Ellert's unjust enrichment claim is not based on the wrong committed by Yamaha which gave rise to his FDUPTA claim, *i.e.,* Yamaha's deceptive advertising. Rather, Ellert's unjust enrichment claim is premised on the benefit (cash) he provided directly to Yamaha in purchasing the E-Bike, battery <u>and</u> battery end cap, but not getting the value promised because, despite never returning

10

his payment, Yamaha failed to deliver the end cap. Clearly, Ellert's unjust enrichment claim exists independent of his FDUTPA claim, even if they arise out of common operative facts.

Similarly, Plaintiffs' claims for breach of an implied covenant of good faith and fair dealing[8] extend beyond just the "specific contractual terms in the Free 2nd Battery promotion," contrary to Yamaha's argument. (ECF No. 33, p. 17). For example, Plaintiffs allege that (1) Yamaha's promotional scheme evolved as a means to sell off the considerable overstock of E-bikes Yamaha manufactured after it incorrectly predicted the market's demand for E-bikes and that (2) Yamaha misled its customers with wildly inconsistent representations about how and whether it would honor its Free 2nd Battery promotions. *See* Compl. at ¶¶ 28-30, 42-52. In this regard, Yamaha's arguments ignore all of the following complaint allegations supporting an implied covenant of good faith and fair dealing claim, here:

> 182. The implied covenant of good faith and fair dealing requires each party to the contract to be honest in its dealings and not purposefully take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.
>
> 183. The implied covenant of good faith and fair dealing further requires that even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith and observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.
>
> 184. Good faith and fair dealing, in connection with entering into contracts and discharging performance and other duties according to their terms, means preserving the spirit not merely the letter-of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract(s) in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.
>
> 185. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or

---

[8] Plaintiffs recognize that Pennsylvania law does not recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing, *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 n.2 (Pa. Super. Ct. 2017), and, thus, did not assert such a Pennsylvania claim.

may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, or abuse of a power to specify terms and interference with or failure to cooperate in the other party's performance.

### C. Plaintiffs' Claims Are Sufficiently Specific and Support Claims for Relief for Purported, Absent Class Members.

The specific facts alleged by Plaintiffs in this case bear no resemblance to the absence of facts alleged in *Pop*, 2024 WL 1194485, *supra*, upon which Yamaha primarily relies to argue that Plaintiffs' complaint fails to satisfy Rule 9(b)'s heightened standard. (ECF No. 33 at pp. 5, 16). To wit, contrary to Plaintiffs inclusion in the complaint of verbatim language used in the Free 2nd Battery promotions seen, the precise dates and terms of purchase, and numerous allegations of consumer complaints about Yamaha's deceptive conduct, including Better Business Bureau complaints and Yamaha's wildly inconsistent responses, in *Pop*, the trial court found that:

> Mr. Pop ha[d] not pled any element of his FDUTPA claim with particularity. He ha[d] not identified any posts by Ms. Epstein that caused him to purchase the Luli Fama products, nor any posts constituting allegedly misleading advertisements.
>
> He ha[d] also failed to allege when he himself viewed such posts. Further, he ha[d] not provided any details of the Luli Fama Defendants' alleged scheme to pay Ms. Epstein and the other Influencers to promote Luli Fama products, other than asserting that Luli Fama pays the Influencers "significant monies" to promote its products. (Doc. # 1-1 at ¶ 11). He has not described the products he purchased from Luli Fama, why they were of inferior quality, or why he was unable to return or resell the products.
>
> Importantly, because of these omissions, Mr. Pop has not sufficiently pled the "causation" element of his FDUTPA claim. While Mr. Pop alleges that the misleading posts induced him to purchase the products (*Id*. at ¶¶ 4-5), he does not allege with particularity that he was induced by any misleading statements by any defendant, including Ms. Epstein. In fact, Mr. Pop ha[d] failed to allege "whether [he] viewed [the alleged misrepresentations] at all before purchasing the allegedly defective products." *PB Prop. Mgmt*., 2013 WL 12172912, at *7. Without alleging that he viewed misrepresentations attributable to Ms. Epstein, Mr. Pop cannot support a claim against her under FDUTPA.

*Id*. at *3.

In fact, because of the limited facts alleged, the *Pop* court found that "[e]ven if Rule 9(b)'s heightened standard did not apply, Mr. Pop still fail[ed] to state a claim[,]" because, as support for Pop's claim that there was a failure to disclose an advertising relationship, he failed to identify any posts where defendant failed to disclose that the post was a paid advertisement. *Id*. at \*8. That is a far cry from the alleged facts here, which expressly identify the deceptive statements and scheme Yamaha used to offload its overstock of E-bikes into the stream of commerce. Indeed, Plaintiffs specifically allege how Yamaha promised that E-bike purchases would include a free second battery and end cap (value at $1,400), despite knowing it would not honor the Free 2nd Battery promotion. Accordingly, *Pop* does not support dismissal of Plaintiffs' claims in this case. Instead, a thorough reading of *Pop* makes clear that Plaintiffs' specific claims, here, support denial of Yamaha's motion to dismiss.

### D. Defendant's Fed. R. Civ. P. 12(b)(2) Arguments Should be Deferred.

For the reasons discussed above, Plaintiffs believe that Yamaha has confessed judgment as to Plaintiff Ellert's claims, with his request for attorneys' fees and costs pursuant to Florida law and FDUTPA still to be determined by this Court. Of course, this is the case because of Yamaha's obvious "pick off" strategy. *Supra* at fn 1. As a result of Yamaha's manipulative conduct, Plaintiffs recognize that, for judicial efficiency, it may be appropriate for them to dismiss their instant claims without prejudice to refile in a separate action.

However, out of an abundance of caution, Plaintiffs briefly address Yamaha's Fed. R. Civ. P. 12(b)(2) arguments, which are primarily framed around the US Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017). Notably, *Bristol-Myers* originated as eight separate lawsuits but was later consolidated in California state court for over 600 plaintiffs (consisting of 86 California residents and 592 residents

13

from 33 other States) against the defendant (incorporated in Delaware and headquartered in New York) as a mass tort action, with the California Supreme Court finding (before being reversed by the US Supreme Court) specific jurisdiction in California's state court for nonresidents' claims. *Id.* at 258. The case was not a class action, and there was no claim of subject matter jurisdiction against the defendant in federal court pursuant to 28 U.S.C. § 1332(d)(2) or the Class Action Fairness Act ("CAFA"). Of course, here, Plaintiffs explicitly plead: "The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Yamaha, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest." Compl. at ¶ 13.

Regarding the issue of personal jurisdiction, a district court, in *Farmer v. Walmart, Inc.*, 729 F. Supp. 3d 1202, 1220 (D.N.M. 2024), recently grappled with the unsettled question of whether *Bristol-Myers'* holding for nonresident plaintiffs in mass tort actions is applicable to federal class actions, ultimately concluding that *Bristol-Myers'* holding does <u>not</u> apply to federal class actions as long as the court has jurisdiction over the named plaintiff's claims:

> Plaintiff argues that because it is undisputed that the Court has specific personal jurisdiction over Defendant to the extent the Amended Complaint asserts claims arising out of purchases of the Class Device made in New Mexico, the case should proceed. ECF No. 25 at 9-10. He argues that the Supreme Court's decision in *Bristol-Myers* is distinguishable because the plaintiffs in that case "brought their case as a coordinated mass action pursuant to a device under Section 404 of the California Civil Procedure Code, which has no analogue in the Federal Rules of Civil Procedure." *Id.* at 10 (citing *Confer v. Milwaukee Elec. Tool Corp.*, CIVIL ACTION No. 2:23-cv-2028, 2023 WL 4420220, at *4, 2023 U.S. Dist. LEXIS 118273, at *9 (D. Kan. July 10, 2023)). He argues that "[u]nlike mass tort actions in California, named plaintiffs in a Rule 23 class action earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one prong of Rule 23(b)." *Id.* (citing *Confer*, 2023 WL 4420220, at *4, 2023 U.S. Dist. LEXIS 118273, at *9). He argues that "Rule 23 rests on the presumption that 'a class action may extend beyond the boundaries of the state where the lead plaintiff brings the case' and that 'nothing in the Rules frowns on nationwide class actions,' even in a forum where defendant is not subject to general jurisdiction." *Id.* (quoting *Confer*, 2023 WL 4420220, at *4, 2023 U.S. Dist. LEXIS 118273, at *10

14

(quoting *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020))). He argues that the "majority position is that *Bristol-Myers* does not apply to putative nationwide class action cases like this one that are brought in federal court." *Id.* (citing *Stacker*, 2021 WL 2646444, at \*8). Plaintiff further argues that none of the cases Defendant cites "dismiss claims pursuant to Rule 12(b)(2), which is the sole relief that Defendant asks for here[,]" but rather were resolved by striking certain class allegations. *Id.* at 10-11. Plaintiff argues that Defendant cannot make the showing necessary to succeed on a motion to strike class allegations. *Id.* at 11.

In its Reply, Defendant argues that the fact that *Bristol-Myers* was brought as a coordinated mass action rather than a class action is an "immaterial distinction." ECF No. 26 at 4. It argues that the courts "are 'bound to follow both the holding and the reasoning ... of the Supreme Court[,]' " *id.* (quoting *United States v. Sutton*, 30 F.4th 981, 987 (10th Cir. 2022)), and "*Bristol-Myers's* reasoning is plain: plaintiffs with in-state connections cannot, consistent with due process, import in the claims of those whose claims have nothing to do with the forum state[,]" *id.*
. . .
"Despite the pains that the Supreme Court took to limit [its] decision, litigants have rushed to argue that *Bristol-Myers Squibb* renders many nationwide class actions constitutionally invalid for lack of specific personal jurisdiction over the defendant with respect to the claims of unnamed class members." *Lyngaas v. Ag*, 992 F.3d 412, 434 (6th Cir. 2021). It appears that most courts to address the issue have concluded that the holding in *Bristol-Myers* does not apply to federal class actions. *See, e.g., id.* (stating that "[t]he vast majority of lower courts have rejected" attempts to extend *Bristol-Myers* to federal class actions); *see also id.* at 435; *Mussat*, 953 F.3d at 445-48; *Confer*, 2023 WL 4420220, at \*4; *Murphy v. Aaron's, Inc.*, Civil Action No. 19-cv-00601-CMA-KLM, 2020 WL 2079188, at \*8, 15 & n.9 (D. Colo. Apr. 30, 2020) (collecting cases); *Sanchez v. Launch Tech. Workforce Sols., LLC,* 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018). "Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims." *Simon v. Ultimate Fitness Grp., LLC*, No. 19 Civ. 890 (CM), 2019 WL 4382204, at \*4 (S.D.N.Y. Aug. 19, 2019).
. . .
[T]he Court is persuaded by, and hereby adopts, the reasoning of the Sixth and Seventh Circuits in *Lyngaas*, 992 F.3d at 434-38, and *Mussat*, 953 F.3d at 445-48, respectively. *See also Murphy*, 2020 WL 2079188, at \*8-17 (containing a lengthy discussion of why the Supreme Court's holding in *Bristol-Myers* does not apply to federal class action lawsuits against a nonresident defendant); *Sanchez*, 297 F. Supp. 3d at 1363-69 (same). Briefly, contrary to Defendant's argument, the difference between the mass tort action in *Bristol-Myers* and a federal class action "is a very material distinction." *Lyngaas*, 992 F.3d at 437. Specifically:

> The mass action in *Bristol-Myers* involved consolidation of eight separate actions, brought on behalf of 86 California plaintiffs and 592 plaintiffs from 33 other states, that were filed in various state

15

> courts. *Id.* at 1776–78. These actions were consolidated in accordance with Section 404 of the California Rule of Civil Procedure Code, which permitted individual plaintiffs to consolidate their individual cases when certain Section 404 prerequisites (i.e., the actions that are pending in different courts shared a common question of fact or law) were met prior to the handling of individual issues. *Mussat*, 953 F.3d at 446 (quoting Cal. Civ. Proc. Code § 404). Importantly, each *Bristol-Myers* plaintiff was a real party in interest where the plaintiff was named and required to effect service. 137 S. Ct. at 1776–78; *see also Mussat*, 953 F.3d at 447; Sanchez, 297 F. Supp. 3d at 1365–66. Thus, the Supreme Court determined that "[w]hat [was] needed---and what [was] missing [for the California state court to exercise personal jurisdiction over the defendant as to non-California plaintiffs' claims], [was] a connection between the forum and the specific claims at issue" by the non-California plaintiffs. *Bristol-Myers*, 137 S. Ct[.] at 1781.

*Murphy*, 2020 WL 2079188, at *16.

> In a class action, by contrast, "the lead plaintiffs earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)." *Mussat*, 953 F.3d at 447. The defendant "is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense." *Sanchez*, 297 F. Supp. 3d at 1366. In this sense, the only "suit" before the court is the one brought by the named plaintiff. Thus, when the court considers whether the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum," *Bristol-Myers*, 137 S. Ct. at 1780 (alterations and citation omitted), the court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members, *see Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' ") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

*Lyngaas*, 992 F.3d at 435. Because of the "unitary" nature of the class claim, the Court "perceives no unfairness in haling *1223 the defendant into court to answer to it in a forum that has specific jurisdiction over the defendant based on the representative's claim." *Sanchez*, 297 F. Supp. 3d at 1366.

Likely recognizing that the *Farmer* court's well-reasoned analysis, including being

persuaded by the Sixth and Seventh Circuits *Lyngaas* and *Mussat* decisions, would apply equally

16

to Plaintiff Ellert's and the other Plaintiffs' class claims *sub judice*, Yamaha omits discussion of this majority view in its papers. Additionally, Yamaha concealed that, behind the scenes and outside the record of this case, it had orchestrated a plan to send only Plaintiff Ellert the end cap Yamaha failed to deliver to him prior to having to retain counsel and file this case on behalf of himself and other Floridians similarly situated. Given Yamaha's clear "pick off" tactic, Plaintiffs contend that this Court will likely need to address whether Yamaha has confessed judgment as to Plaintiff Ellert's claims, leaving only his claim for entitlement to attorneys' fees and costs open, before deciding whether all the class claims fall within the personal jurisdiction of this court. Accordingly, Plaintiffs pray that this Court defer on the Fed. R. Civ. P. 12(b)(2) question until the circumstances surrounding Plaintiff Ellert's claims are addressed.

## IV.  Conclusion

Plaintiffs brought this class action to confront Yamaha over its broken promises and wildly inconsistent representations to the consumer public as to why it was not delivering on the Free 2nd Battery promotion it concocted to unload the overstock of E-bikes it manufactured after wrongly predicting the future of the E-bike market. Now, Yamaha's litigation strategy appears to be an extension of its prelitigation practices as evidenced by its outside-the-record "pick off" maneuver.

In this regard, Plaintiffs contend Yamaha's conduct is tantamount to a confession of Judgment on the Florida claims, including FDUTPA, with Plaintiff Ellert's entitlement to attorneys' fees and costs still pending. Given this gamesmanship, if this Court finds it to be more judicially efficient for the remaining Plaintiffs to bring their class claims in a separate action, then a dismissal without prejudice *may* be appropriate. If, however, this Court does not believe that Yamaha's "pick off" conduct amounts to a confession of judgment, Plaintiffs contend that Yamaha's instant motion to dismiss is due to be denied *in toto*.

17

Dated: December 1, 2025                    Respectfully Submitted,

                                        */s/ Geoff S. Stahl*
                                        Geoff S. Stahl
                                        Florida Bar No. 89240
                                        Rachel Bentley, Esq.
Florida Bar No.: 106870
Steven Calamusa, Esq.
Florida Bar No.: 992534
**Gordon & Partners, P.A.**
4114 Northlake Blvd
Palm Beach Gardens, FL 33410
Telephone: (561)799-5070
Facsimile: (561)799-4050
Email: gstahl@fortheinjured.com
rbentley@fortheinjured.com
scalamusa@fortheinjured.com

Joshua Zipper
Florida Bar No.: 45247
**Shapiro Blasi Wasserman Hermann, PA**
7777 Glades Rd Ste 400
Boca Raton, FL 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722
Email: jzipper@sbwh.law

*Counsel for Plaintiffs*

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of December 2025 the foregoing was filed using the Court's CM/ECF system which will send electronic notice to all counsel of record.

By:*/s/ Geoff S. Stahl*
Geoff S. Stahl

19