UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES ELLERT, TOSIN
ADESINA, AARON DOMBECK,
GEORGE DOUKAS, and CHAD
WHITAKER,

      Plaintiffs,

v.                                                                                 Case No: 6:25-cv-1588-JSS-DCI

YAMAHA MOTOR CORPORATION,
U.S.A., INC.,

      Defendant.
_____/

**<u>ORDER</u>**

Defendant Yamaha Motor Corporation, U.S.A.[1] moves to dismiss the claims

of Plaintiffs Tosin Adesina, Aaron Dombeck, George Doukas, and Chad Whitaker for

lack of personal jurisdiction.  (Dkts. 33, 43.)  Defendant also moves to dismiss the

claims of Plaintiff Charles Ellert for lack of standing and for failure to state a claim.

(*Id.*)  Plaintiffs oppose the motion.  (Dkt. 37.)  The court held a hearing on Defendant's

motion on February 19, 2026.  Thereafter, Plaintiffs moved to sever and transfer venue

of the claims of Plaintiffs Adesina, Dombeck, Doukas, and Whitaker.  (Dkt. 52.)

Defendant opposes the motion.  (Dkt. 53.)  Upon consideration, for the reasons

outlined below, Defendant's motion is granted in part and denied in part, and

---

[1] "The complaint names Yamaha Motor Corporation, U.S.A., Inc., but the correct name for the defendant is Yamaha Motor Corporation, U.S.A."  (Dkt. 33 at 2 n.1.)

Plaintiffs' motion is denied.

## BACKGROUND

Defendant is incorporated and has its principal place of business in California. (Dkt. 1 ¶ 21.)  Until recently, Defendant sold electric power-assisted bicycles, or e-bikes. (*Id.* ¶¶ 26–27.)  Plaintiffs are five consumers who allegedly bought Defendant's e-bikes. (*Id.* ¶ 9.)  Charles Ellert claims to have bought an e-bike—a 2024 Yamaha Wabash RT—in Florida. (*Id.* ¶¶ 16, 54.)  The other Plaintiffs—Tosin Adesina, Aaron Dombeck, George Doukas, and Chad Whitaker—are residents of, and allegedly bought their bikes in, New York, Maryland, and Pennsylvania. (*Id.* ¶¶ 17–20.)

At the end of 2024, Defendant ran a limited promotional offer shortly before it stopped selling e-bikes. (*Id.* ¶¶ 28–31.)  Between December 2023 and December 2024, Defendant advertised a free second battery for customers who bought select e-bike models and satisfied certain conditions. (*Id.* ¶ 34.)  Each Plaintiff allegedly saw this promotion and acted on it. (*Id.* ¶¶ 53–56, 62–65, 71–73, 80–83, 90–93.)  The specific terms of the battery promotion seemingly varied over time; Plaintiffs allege seeing different versions of the promotion before buying an e-bike. (*See id.* ¶¶ 55, 64, 72, 82, 92.)  Ellert, Dombeck, and Whitaker allegedly saw an ad stating that the promotion was available to customers who bought a qualifying e-bike "between August 23, 2024 and November 4, 2024," and that "[u]pon completion of the warranty registration, a free second battery and end cap ($1,400 value) will be shipped directly to the registered owners at no additional cost." (*Id.* ¶ 55; *see id.* ¶¶ 72, 92.)  In contrast, Doukas and

Adesina allege having seen a variation of the ad that never mentioned an "end cap" and came with an additional qualification that the promotion applied only "while supplies last!" (*Id.* ¶¶ 64, 82.)  Plaintiffs' experiences after buying the bikes also varied. (*See id.* ¶¶ 60, 69, 78, 87, 97.)  Ellert and Adesina state that they did, in fact, receive a free second battery, but are missing a small plastic end cap for the battery.  (*Id.* ¶¶ 60, 69.)  The other three plaintiffs claim that, "[t]o date," they have not received a battery. (*Id.* ¶¶ 78, 87, 97.)

Based on these allegations, Plaintiffs assert claims under the consumer protection statutes of Florida, Maryland, New York, and Pennsylvania, as well as claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  (*Id.* ¶¶ 117–195.)  Plaintiffs bring these claims on behalf of a putative nationwide class, as well as sub-classes of consumers in Florida, Maryland, New York, and Pennsylvania.  (*Id.* ¶ 105.)  Specifically, Plaintiffs bring claims for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Maryland Consumer Protection Act, the New York Business Law, the New York General Business Law, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, in addition to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and for unjust enrichment.  (*Id.* at 31–47.)

After Defendant moved to dismiss, Defendant, through its counsel, "shipped Plaintiff Ellert's counsel a battery end cap with a letter asserting that by receiving 'the battery end cap, Mr. Ellert has now received everything to which he claims he is

entitled under the promotion . . . He thus lacks standing to continue pursuing any claims in this action.'" (Dkt. 37 at 1 n.1.)  Both parties requested oral argument on Defendant's motion to dismiss and the events that followed, (Dkts. 34, 38), which the court granted, (Dkt. 41).  Oral argument was held on February 19, 2026.  (Dkts. 42, 50, 51.)  After oral argument, Plaintiffs moved to sever and transfer venue of the claims of Plaintiffs Adesina, Dombeck, Doukas, and Whitaker to the United States District Court for the Central District of California.  (Dkt. 52.)

**APPLICABLE STANDARDS**

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict."  *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  "Vague and conclusory allegations do not satisfy this burden."  *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018); *see also Storms v. Haugland Energy Grp., LLC*, No. 18-cv-80334, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018) (determining that the pleading standards articulated in *Twombly* and *Iqbal* apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) such that "[a]llegations that are 'no more than conclusions' . . . do not count toward establishing a prima facie case" of personal jurisdiction (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009))), *report and recommendation adopted by* 2018 WL 4347604, at *1 (S.D. Fla. Sept. 4, 2018).  In determining whether a plaintiff has established a prima facie case of personal jurisdiction, "the district court must accept the facts alleged in the complaint as true" and "must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b).  To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).  In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC*

*Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)).

## ANALYSIS

The court begins by addressing personal jurisdiction and standing. The court then considers Plaintiffs' breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of contract, and FDUTPA claims.

### A. Personal Jurisdiction

For a court to exercise personal jurisdiction over a nonresident defendant, a plaintiff must show that the exercise of personal jurisdiction is (1) "appropriate under the state long-arm statute and (2) [would] not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). Even in a class action, "the named representatives must be able to demonstrate either general or specific personal jurisdiction." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020); *accord Lyngaas v. Curaden Ag*, 992 F.3d 412, 437 (6th Cir. 2021); *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1231 (M.D. Fla. 2020).[2]

---

[2] "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVD Windows, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quotation omitted). However, the court assumes without deciding that the Plaintiffs state a viable cause of action. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("If both Florida law and the United States Constitution permit, the federal district court may exercise jurisdiction over the

To establish general jurisdiction in Florida, a complaint must plead facts showing that a company has affiliations with Florida that "are so continuous and systematic as to render them essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quotation omitted); *see Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the [s]tate are so continuous and systematic as to render them essentially at home in the forum [s]tate." (quotation omitted)); *Gazelles FL, Inc. v. Cupp*, No. 6:18-CV-544-ORL-22KRS, 2018 WL 7364591, at *6 (M.D. Fla. Sept. 26, 2018) (noting that a complaint must show that the defendants have "continuous and systematic business contacts with Florida for them to be rendered essentially at home in Florida"). General jurisdiction is typically established by pointing to a company's principal place of business or place of incorporation. *See Daimler*, 571 U.S. at 137 (explaining that a company's place of incorporation and principal place of business are bases for general jurisdiction). Here, Plaintiffs allege that Defendant is incorporated in and maintains its principal place of business in California. (Dkt. 1 ¶ 21.) Given the lack of continuous, systematic contact with Florida, the court lacks general jurisdiction over Defendant. *See Mussat*, 953 F.3d at 443 (noting that the defendant was not subject to general jurisdiction in the forum state); *Waite v. All Acq. Corp.*, 901 F.3d 1307, 1317–

---

nonresident defendant."); *Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *7 (S.D. Fla. Dec. 30, 2025) (noting that Florida courts typically must determine whether the complaint states a cause of action, and assuming without deciding that the complaint did in order to first conduct the personal jurisdiction analysis).

18 (11th Cir. 2018) (concluding that a Florida court could not assert general jurisdiction over a corporation because it was not at home in Florida).

Alternatively, specific jurisdiction exists where a plaintiff's complaint "arises out of or relates to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 122, 127; *see* Fla. Stat. § 48.193(1) (extending jurisdiction to claims "arising from" acts "in this state"). Put another way, specific jurisdiction looks at the relationship between the plaintiff, the defendant, the forum, and the claims underlying the litigation and "depends on an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alterations adopted and quotation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate." *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017); *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a [s]tate do not justify the exercise of jurisdiction over a claim unrelated to those sales."). "The plaintiffs bear the burden of establishing" whether their "claims arise out of or relate to one of the defendant's contacts with the forum state" and whether "the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (quotation omitted). "If they carry that burden," the defendant "must then make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation

omitted).

In *Bristol-Myers Squibb*, the Supreme Court addressed whether courts require specific jurisdiction over the defendant as to each plaintiff in a multi-plaintiff case involving injuries allegedly caused by defendant's drug.  582 U.S. at 258.  The Court applied settled principles of specific jurisdiction to a case brought in California with "[m]ore than 600 plaintiffs," only some of whom were California residents or had any connection to the state.  *Id.*  The Court explained that "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction," even when those third parties were other plaintiffs in the same case who could "bring claims similar to those brought by the nonresidents."  *Id.* at 265 (ellipses and quotation omitted).  Specifically, in that case, "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested" the drug at issue "in California—and allegedly sustained the same injuries as did the nonresidents—d[id] not allow the [s]tate to assert specific jurisdiction over the nonresidents' claims."  *Id.* (emphasis omitted).  Because "all the conduct giving rise to the nonresidents' claims occurred elsewhere," the Court held that "California courts [could not] claim specific jurisdiction" over the defendant as to those plaintiffs' claims.  *Id.*[3]

Similarly, in *Lewis v. Mercedes-Benz USA, LLC*, the court noted that "[w]hen a

---

[3] "Nothing in *Bristol-Myers Squibb* suggests that it does not apply to named plaintiffs in a putative class action; rather, the Court announced a general principle—that due process requires a connection between the forum and the specific claims at issue." *Feldman v. BRP US, Inc.*, No. 17-CIV-61150, 2018 WL 8300534, at *4 (S.D. Fla. Mar. 28, 2018) (alterations adopted and quotation omitted).  "That principle applies with equal force whether or not the plaintiff is a putative class representative." *Id.*

suit is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." 530 F. Supp. 3d 1183, 1226 (S.D. Fla. 2021). In that class action case, the court noted that "the named out-of-state [p]laintiffs alleg[d] no connection with Florida whatsoever" and were instead residents of other states "who did not purchase their [c]lass [v]ehicles in Florida and did not suffer any injury in Florida." *Id.* Thus, the court concluded that the court could not exercise "personal jurisdiction over the nonresident [p]laintiffs' state law claims" and dismissed the nonresident plaintiffs and their claims. *Id.* at 1226–27.

Here, Plaintiff Ellert invokes the court's specific jurisdiction over his claims because they relate to Defendant's connections to Florida. According to Plaintiff Ellert, he is a citizen and resident of Florida who bought Defendant's e-bike, which "was delivered to Plaintiff's local Yamaha dealer." (Dkt. 1 at 5, 16–18.) Because Ellert presumably became aware of the promotion in Florida, reviewed the offer while in Florida, made the purchase while in Florida, and picked up the e-bike from his local dealer in Florida, the court has specific jurisdiction over Defendant as to Ellert's claims. (*See id.*)

None of the other Plaintiffs' claims "arise[] out of or relate[] to [Defendant]'s contacts with" Florida. *See Daimler*, 571 U.S. at 127. The nonresident Plaintiffs' do not allege they became aware of Defendant's promotion while in Florida, reviewed the promotional offer while in Florida, made a purchase while in Florida or from a Florida distributor, and have not alleged any other possible relationship between Florida, the nonresident Plaintiffs' claims, and Defendant's actions. (*See* Dkt. 1 ¶¶ 63–

66, 72–75, 81–84, 91–94.)  As a result, the nonresident Plaintiffs cannot establish that the court has specific jurisdiction over their claims.  *See Bristol-Myers Squibb*, 582 U.S. at 265 (holding that there was no specific jurisdiction over a defendant where the nonresident plaintiffs did not claim to have suffered harm in the state in which they were suing and all of the conduct giving rise to the nonresidents' claims occurred elsewhere); *Lewis*, 530 F. Supp. 3d at 1226 n.13 (applying *Bristol-Myers Squibb* and dismissing "the state law claims brought by the nonresident [p]laintiffs" which arose "from conduct that took place entirely outside of Florida, the forum in which they wish[ed] to bring suit"); *Lee v. Branch Banking & Tr. Co.*, No. 18-21876-CIV, 2018 WL 5633995, at *4 (S.D. Fla. Oct. 31, 2018) (dismissing claims of the nonresident named plaintiffs in putative class because the court lacked specific jurisdiction where the amended complaint "contain[ed] no allegations connecting" their "claims to Florida"); *Howe v. Samsung Elecs. Am., Inc.*, No. 1:16CV386-RH/GRJ, 2018 WL 2212982, at *2–5 (N.D. Fla. Jan. 5, 2018) (concluding that, in a proposed class action, certain named plaintiffs could not sue a company in Florida because the court lacked personal jurisdiction over the defendant as to those plaintiffs).  Accordingly, because Plaintiffs Adesina, Dombeck, Doukas, and Whitaker allege no connection between their claims, Defendant, and Florida—a point Plaintiffs do not dispute—the court lacks specific jurisdiction over Defendant as to the claims brought by the nonresident Plaintiffs.  (*See* Dkt. 37.)

In response, Plaintiffs cite *Farmer v. Walmart, Inc.*, 729 F. Supp. 3d 1202 (D. N.M. 2024).  There, the defendant argued "that the court lack[ed] personal jurisdiction

over [the d]efendant to the extent the [a]mended [c]omplaint assert[ed] claims on behalf of unnamed putative class members." *Id.* at 1219. The court disagreed, concluding that "there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions[] as long as a court has jurisdiction over the class representative's claims." *Id.* at 1221 (quoting *Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *4 (S.D.N.Y. Aug. 19, 2019)). *Farmer* is distinguishable as it deals with an entirely separate question. In *Farmer* the issue centered around whether the court had "specific personal jurisdiction over the defendant with respect to the claims of unnamed class members." *Id.* (quoting *Lyngaas*, 992 F.3d at 434). Here, the question is whether the court has specific jurisdiction over Defendant with respect to the claims of named plaintiffs, "real part[ies] in interest." *Id.* at 1222 (quoting *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188, at *16 (D. Colo. Apr. 30, 2020)); *see Lyngaas*, 992 F.3d at 433 ("Long-standing precedent shows that courts have routinely exercised personal jurisdiction over out-of-state defendants in nationwide class actions, and the personal-jurisdiction analysis has focused on the defendant, the forum, and the *named plaintiff*, who is the putative class representative."); *Mussat*, 953 F.3d at 448 ("The rules for class certification support a focus on the named representative for purposes of personal jurisdiction.").[4] Plaintiffs do not cite a case that disagrees with the

---

[4] Both *Lyngaas* and *Mussat* similarly focused on the question of whether a court needed specific jurisdiction over a defendant as to unnamed plaintiffs in a putative class action. *See* 992 F.3d at 433; 953 F.3d at 443.

proposition that, in the context of a class action, the court must analyze "the claims raised by the named plaintiff[s]." *Farmer*, 729 F. Supp. 3d at 1222 (quoting *Lyngaas*, 992 F.3d at 435). In fact, *Farmer* agrees with the proposition that "[t]he named representatives [in a class action] must be able to demonstrate either general or specific personal jurisdiction." 729 F. Supp. 3d at 1222 (quoting *Mussat*, 953 F.3d at 447).

Instead of dismissing Plaintiffs Adesina, Dombeck, Doukas, and Whitaker, Plaintiffs ask this court to sever and transfer venue of these Plaintiffs "pursuant to 28 U.S.C. § 1404(a) and/or 1406(a), and Fed. R. Civ. P. 21." (Dkt. 52 at 1.) The court declines to do so. *See Est. of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1356 (11th Cir. 2010) (explaining that appellate courts "review for an abuse of discretion the decision of a district court to sever a case pursuant to Fed. R. Civ. P. 21"); *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985) (noting that generally, a "plaintiff, by bringing the suit . . . relinquishe[s the] right to object to venue"); *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1353 (S.D. Fla. 2017) (declining the plaintiffs' request to sever and transfer claims after concluding that the court lacked jurisdiction over the defendants and instead dismissing those defendants).

Section 1404 permits district courts, "[f]or the convenience of parties and witnesses, in the interest of justice," to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or

- 13 -

division in which it could have been brought." 28 U.S.C. § 1406(a). Finally, Federal Rule of Civil Procedure 21 explains that "[m]isjoinder of parties is not a ground for dismissing an action" and that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21.

Plaintiffs cite several cases in support of their request which are inapposite. (Dkt. 52 at 8–17.) For instance, the court recognizes that courts do sever and transfer claims when those claims would otherwise be time-barred. *See Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1272 (M.D. Fla. 2014) (stating that "[t]here is no doubt that the burden on the interstate judicial system will be increased and judicial economy will be disserved by severance and transfer," but that "burden pale[d] in comparison to the prejudice [the p]laintiffs would suffer were the [c]ourt to dismiss" because otherwise the "[p]laintiffs' claims for relief would be time-barred by the applicable statute of limitations"); *Harco Nat'l Ins. Co. v. Cascade Aircraft Mgmt., LLC*, No. 1:24-CV-00180-SEG, 2024 WL 6905544, at *7–8 (N.D. Ga. Aug. 19, 2024) (concluding that it was "in the interest of justice to sever and transfer" claims rather than to dismiss them since at least some of the claims may otherwise be time-barred); *Lewis v. Abbott Lab'ys, Inc.*, No. 6:19-CV-909-ORL-31LRH, 2020 WL 631595, at *9–12 (M.D. Fla. Feb. 5, 2020) (severing and transferring a plaintiff's claims because they would otherwise be time-barred), *report and recommendation adopted by* 2020 WL 998717, at *1 (M.D. Fla. Mar. 2, 2020). Plaintiffs do not argue that their claims would be time-barred and that such concerns should impact the court's analysis of whether

- 14 -

to sever and transfer. (*See* Dkt. 52.) Courts also transfer cases when the defendant asks for the transfer, which is inapplicable here. *See Colon v. Moore & Van Allen PLLC*, No. 8:25-CV-1243-WFJ-LSG, 2026 WL 81751, at *1–3 (M.D. Fla. Jan. 12, 2026) (granting the defendants' motion to transfer); *In re Target Corp. S'holder Class Action Litig.*, No. 2:25-CV-00135-KCD-DNF, 2025 WL 3187126, at *5 (M.D. Fla. Nov. 14, 2025) (granting a defendant's motion to transfer); *Beach TV Cable Co., Inc. v. Walsh*, No. 5:22-CV-148-AW-MJF, 2023 WL 2731708, at *2–3 (N.D. Fla. Jan. 13, 2023) (transferring claims of most defendants at their request, except for a defendant who signed a valid forum-selection clause); *Kang Haggerty & Fetbroyt LLC v. Hayes*, No. 3:16-CV-235-J-25JRK, 2017 WL 9938022, at *2 (M.D. Fla. Mar. 22, 2017) (granting the defendants' motion to dismiss based on section 1404(a) and concluding that the proper remedy for such a motion is to transfer the case to the more convenient forum). (*See* Dkt. 53.)

## B. Standing

Both Defendant and Plaintiffs raise issues pertaining to standing. (*See* Dkt. 33 at 17–19; Dkt. 37 at 1; Dkt. 43 at 4.) Specifically, Defendant contests whether Plaintiff Ellert has standing to seek injunctive relief or to sue over other bike models. (*See* Dkt. 33 at 17–19.) Further, both parties dispute whether Plaintiff Ellert has standing now that he has received an end cap, and what, if any, other implications exist as a result of Defendant sending the end cap to Plaintiff Ellert. (Dkt. 37 at 1; Dkt. 43 at 4.) The court addresses each in turn.

"Federal courts are courts of limited jurisdiction." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quotation omitted). Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy "the case-or-controversy requirement of Article III," Plaintiffs must prove that they have standing to pursue each of the claims asserted in the complaint. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Proving standing requires Plaintiffs to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "The proof required for a plaintiff to establish standing varies depending on the stage of litigation." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 891 (11th Cir. 2023); *see Lujan*, 504 U.S. at 561 ("Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

Defendant argues that Plaintiff Ellert lacks standing to both seek injunctive relief and sue over bike models he never bought, (Dkt. 33 at 17–19), to which Plaintiffs do not respond, (*see* Dkt. 37). *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (deeming claim abandoned where argument was not presented in initial

response); *Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:09-CV-01877-RLV-GGB, 2012 WL 12888680, at *4 (N.D. Ga. Oct. 15, 2012) (noting that the plaintiff had "not addressed [the d]efendants' standing argument at all" and that "failure to respond to arguments relating to a claim in the plaintiff's initial response to the motion constitutes abandonment of the claim," and citing cases), *report and recommendation adopted by* 2013 WL 12156401, at *1 (N.D. Ga. Feb. 21, 2013), *aff'd*, 544 F. App'x 906 (11th Cir. 2013). Accordingly, the court treats Plaintiffs' claims for injunctive relief and his claims regarding any bikes other than the 2024 Yamaha Wabash RT that Plaintiff Ellert alleges he bought, (*see* Dkt. 1 at 16–17), as abandoned. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned." (quotation omitted)); *Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon a motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." (alteration adopted and quotation omitted)); *A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) (dismissing claims as abandoned where the plaintiff failed to respond to the defendants' arguments concerning the dismissal of those claims).

As to Defendant sending Plaintiff Ellert an end cap, the parties dispute whether this results in Plaintiff Ellert lacking standing to pursue his claims, or instead whether Defendant's outside the record conduct means that Plaintiff Ellert is "entitled to a

- 17 -

judgment against [Defendant] for his claims and attorneys' fees." (Dkt. 37 at 1 n.1; *see* Dkt. 43.)  The court begins by addressing the latter argument.

Without citation to authority, Plaintiffs "contend that this [c]ourt will likely need to address whether [Defendant] has confessed judgment as to Plaintiff Ellert's claims." (Dkt. 37 at 17.)  Specifically, "Plaintiffs contend [that Defendant's] conduct is tantamount to a confession of [j]udgment on the Florida claims," entitling Plaintiff Ellert to "attorneys' fees and costs." (*Id.*)[5]  The court disagrees.  Plaintiffs cite various insurance-related cases to support their argument. (Dkt. 37 at 1 n.1. (citing *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679 (Fla. 2000); *Wollard v. Lloyd's and Cos. of Lloyd's*, 439 So. 2d 217 (Fla. 1983); *Clifton v. United Cas. Ins. Co. of Am.*, 31 So. 3d 826 (Fla. Dist. Ct. App. 2010).)  However, these cases are based on a since-repealed statute, Fla. Stat. § 627.428, which previously entitled a plaintiff to attorney fees "[u]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured." *See Dudley v. Am. Zurich Ins. Co.*, No. 2:24-CV-574-SPC-KCD, 2025 WL 755289, at *1 n.2 (M.D. Fla. Mar. 10, 2025) ("Section 627.428 no longer allows attorney's fees in suits arising under residential or commercial property insurance policies."); *Boyle & Boyle, Inc. v. Allied Ins. Co. of Am.*, No. 2:23-CV-884-SPC-KCD, 2024 WL 4751111, at *2 n.1 (M.D. Fla. Nov. 12, 2024) ("This statute has since been

---

[5] Further, to the extent Plaintiffs ask this court to find that Defendant confessed judgment, the court declines to do so as Plaintiffs have not properly moved for such relief.  *See Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1319 n.1 (M.D. Fla. 2017) ("[A] request for affirmative relief . . . is not properly made when simply included in a response to a motion."), *aff'd,* 758 F. App'x 777 (11th Cir. 2018).

amended and no longer allows attorney's fees in suits arising under residential or commercial property insurance policies."), *appeal dismissed*, No. 24-13897-DD, 2025 WL 3491325 (11th Cir. June 16, 2025).

Nevertheless, the court agrees with Plaintiffs that Plaintiff Ellert still has standing despite receiving a battery end cap from Defendant. (Dkt. 37 at 1 n.1 (explaining that "eight days after filing the instant motion with this [c]ourt, . . . Yamaha, through its counsel, shipped Plaintiff Ellert's counsel a battery 'end cap' with a letter asserting that by receiving 'the battery end cap, Mr. Ellert has now received everything to which he claims he is entitled under the promotion . . . He thus lacks standing to continue pursuing any claims in this action.'") "In general, a putative class action becomes moot if no named plaintiff with a live claim remains at the time of the district court's class certification decision." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *9 (11th Cir. Aug. 30, 2023). "[H]owever, the Supreme Court has crafted several exceptions to the general rule that pre-certification mootness of the named plaintiff's claims divests the federal courts of jurisdiction over the entire action." *Id.* "If one of these exceptions applies, class certification 'relates back' to the filing of the complaint, giving the named plaintiff standing to pursue certification despite the intervening mootness of his individual claim." *Id.* (citing cases). Applicable here is the picking off exception, which "cures mootness when a defendant resolves the named plaintiff's claims before class certification—by, for instance, paying the named plaintiff's individual claim." *Id.* at 10; *see Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 706 (11th Cir. 2014) ("In those cases

- 19 -

in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage.   This result is precisely what the relation back doctrine . . . condemns." (alteration adopted and quotation omitted)).

Defendant disagrees, instead asserting that Plaintiff Ellert's receipt of the end cap "raises a question of whether he will be able to demonstrate standing in this case." (Dkt. 43 at 4.)  Defendant states that "[a] plaintiff must have Article III standing at all stages of litigation."  (*Id.* (alteration adopted and quotation omitted).)  Even so, as explained above, there are certain exceptions to that rule, specifically that an "offer of full relief to the named plaintiff does not moot a class action."  *Stein*, 772 F.3d at 707. Defendant also states that "multiple courts have held that a customer lacks Article III standing to sue a retailer if the company already provided the customer with full relief." (*Id.* (quotation omitted).)  Yet, in support, Defendant cites two cases discussing money-back guarantees, which are not relevant here.  (*See id.* (citing *Dawkins v. Publix Super Mkts., Inc.*, 796 F. Supp. 3d 1192, 1197 (S.D. Fla. 2025); *Fields v. Walmart Inc.*, No. 8:23-CV-2057-TPB-UAM, 2024 WL 1984586, at *2 (M.D. Fla. Apr. 8, 2024); *see also* Dkt. 1.)  Given the applicable picking off exception, the court finds that Plaintiff Ellert retains "standing to pursue certification despite the intervening mootness of his individual claim."  *See Sos*, 2023 WL 5608014, at *9.

## C. Failure to State a Claim

Defendant makes several arguments against Plaintiff Ellert's remaining claims.

(Dkt. 33 at 13–17.)   The court begins by addressing Defendant's arguments that Plaintiff Ellert's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are impermissibly duplicative.  (Dkt. 33 at 15–17.)  The court then turns to whether Plaintiff Ellert has alleged actual damages sufficient to state a breach of contract claim, as well as a claim under the FDUTPA. (*Id.* at 13–15.)

"Florida law does not generally permit a party to pursue a cause of action on an express contract at the same time as he pursues a cause of action for unjust enrichment."  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000) (collecting cases); *see Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (noting that under Florida law "a plaintiff cannot recover under an equitable theory such as unjust enrichment when an express agreement covers the same subject matter"); *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) ("It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist."), *rev'd in part sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014).  Both federal and Florida law, however, permit pleading in the alternative.  *See* Fed. R. Civ. P. 8(a)(3) (permitting a pleading to "include relief in the alternative or different types of relief"); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (concluding that a party can alternatively allege recovery under an express contract and seek equitable relief under the theory of unjust enrichment).  Further, "it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the

unjust enrichment count fails" and "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature." *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013); *see State Farm*, 427 F. App'x at 722 ("It is only upon a showing that an express contract exists between the parties that the unjust enrichment count fails." (alterations adopted and ellipses and quotations omitted)); *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013) ("Upon a showing that an express contract exists, an unjust enrichment count will fail.").[6]

"To the extent that [Plaintiff Ellert] pleads unjust enrichment as an alternative to his breach of contract claim, such a claim should not be dismissed at this time." *See Shibata*, 133 F. Supp. 2d at 1320; *see also State Farm*, 427 F. App'x at 722 (concluding that, to the extent the plaintiff "did have adequate legal remedies, those remedies did not bar its unjust enrichment claim"); *Morgan v. Ace Am. Ins. Co.*, No. 3:16-CV-705-J-39MCR, 2018 WL 11354496, at *2 (M.D. Fla. Sept. 28, 2018) ("At this stage in the case, it is unclear whether a contract governs the parties interactions to the point that [the p]laintiff cannot recover for unjust enrichment."); *Martorella*, 931 F. Supp. 2d at

---

[6] In support of its argument that Plaintiffs claim for unjust enrichment must be dismissed, Defendant cites *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243 (M.D. Fla. 2013), *Magma Glob., LLC v. NHT SP, LLC*, No. 8:23-CV-2076-SDM-AEP, 2023 WL 8357737 (M.D. Fla. Dec. 1, 2023), and *Boddison v. Gen. Motors LLC*, No. 8:20-CV-2139-WFJ-AEP, 2021 WL 2435388 (M.D. Fla. Mar. 19, 2021). However, those cases are distinguishable because, there, "the parties agree[d] that an express contract existed." *Magma*, 2023 WL 8357737, at *2; *see Degutis*, 978 F. Supp. 2d at 1266 ("In this case, it is undisputed . . . that an express mortgage contracts exists . . . ."); *Boddison*, 2021 WL 2435388, at *8 (stating that the defendant argued that "unjust enrichment as a cause of action [wa]s not available because the limited new vehicle warranties between the parties are express contracts"). Here, Defendant has not agreed that an express contract exists. (*See* Dkt. 33 at 16.)

1228 ("Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature."); *Supermedia LLC v. Kantaras & Andreopoulos*, No. 8:11-CV-02328-T-17, 2012 WL 895444, at *4 (M.D. Fla. Mar. 15, 2012) ("[I]t is well-settled in this Circuit that breach of contract and unjust enrichment may be pled in the alternative." (quotation omitted)); *Donnelly v. Cir. City Stores, Inc.*, No. 506-CV-387-OC-10GRJ, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007) ("[A]lternate pleading allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties."). (*See* Dkt. 37 at 9–10 ("Plaintiffs plead their breach of implied covenant and unjust enrichment claims in the alternative.").)[7]

"However, a breach of the implied covenant [of good faith and fair dealing] may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract." *Shibata*, 133 F. Supp. 2d at 1319 (collecting cases); *see Trief v. Am. Gen. Life Ins. Co.*, 444 F. Supp.

---

[7] Defendant also argues that "a claim for unjust enrichment cannot be 'based on the same alleged wrong that underlies his FDUTPA claim.'" (Dkt. 33 at 16 (alteration adopted and quoting *Pop v. LuliFama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2024 WL 1194485, at *7 (M.D. Fla. Mar. 20, 2024), *aff'd*, 145 F.4th 1285 (11th Cir. 2025)).) However, the quote in its entirety states that "the unjust enrichment claim is based on the same wrong that underlies his FDUTPA claim in that it is based solely on the unjust nature of the [defendants'] alleged failure to disclose an advertising relationship" and that this was impermissible as "a claim of unjust enrichment may not be predicated on a wrong committed by a defendant." *Pop*, 2024 WL 1194485, at *7. In fact, elsewhere in the opinion, the court seems to disagree with the notion that an unjust enrichment claim cannot be based on the same alleged wrong that underlies an FDUTPA claim. *See id.* at 6 n.1 (recognizing that "plaintiffs have been permitted to bring unjust enrichment claims in the alternative provided that an express contract did not exist between the parties" and dismissing the unjust enrichment claim on other grounds).

2d 1268, 1270 (S.D. Fla. 2006) (dismissing a claim for a breach of an implied covenant of good faith and fair dealing because it amounted "to nothing more than a general allegation for breach of contract" and was therefore duplicative); *Griffin v. Motorsport Games Inc.*, No. 24-CV-21929, 2024 WL 4564330, at *6 (S.D. Fla. Oct. 24, 2024) ("[C]ourts have found that a claim for breach of an implied covenant of good faith and fair dealing is invalid when it is based on the same facts as the breach of contract."); *Enola Contracting Servs., Inc. v. URS Grp., Inc.*, No. 5:08CV2-RS-EMT, 2008 WL 1844612, at *3 (N.D. Fla. Apr. 23, 2008) ("A cause of action based on the covenant cannot be maintained . . . where the allegations underlying the claim for breach of the implied covenant are duplicative of those which support the claim for breach of contract.").

"Here, Plaintiff[s'] breach of contract and breach of implied duty of good faith and fair dealing claims both arise from the same allegations." *See Grant v. Centerstate Bank*, No. 8:20-CV-1920-MSS-AAS, 2021 WL 9594009, at *3 (M.D. Fla. July 6, 2021); *Bradman v. Mental Health Network, Inc.*, No. 08-61376-CIV-MARRA, 2008 WL 5110525, at *3 (S.D. Fla. Dec. 2, 2008) (concluding that because a count for breach of the implied covenant of good faith and fair dealing "merely incorporate[d] by reference all the allegations of the [c]omplaint," it "duplicate[d] the allegations supporting the breach of contract claim" making it "impossible for the [c]ourt to distinguish between the[] two claims"). (*See* Dkt. 1 at 43 ("Plaintiffs reallege and incorporate by reference the preceding allegations at paragraphs 1 – 116 as though fully set forth herein."); *id.* at 44 ("Plaintiffs reallege and incorporate by reference the preceding allegations at

paragraphs 1 – 116 as though fully set forth herein.").)  Accordingly, count VII is dismissed without prejudice.  *See Harrison v. Digit. Health Plan*, 183 F.3d 1235, 1237 n.1 (11th Cir. 1999) (affirming a district court's order dismissing duplicative claims); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 167 (11th Cir. 1997) (suggesting that dismissal is the appropriate method for a duplicative cause of action); *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996) (discussing the inherent authority of the district court to narrow issues in a case); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *5 (S.D. Fla. Aug. 25, 2009) (cautioning that if the plaintiff "attempts to re-plead this count, it must identify the express contractual provision allegedly breached and must take care not to duplicate the allegations supporting the breach of contract claim").

Plaintiffs contend that their claims "extend beyond the specific contractual terms." (Dkt. 37 at 11.)  Still, "a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Shibata*, 133 F. Supp. 2d at 1319.  Here, the allegations Plaintiffs identify are "the same alleged acts" underlying the breach of contract claim, making it "superfluous as no additional claim is actually stated."[8]  *See id.*; *see also ACG S. Ins. Agency, LLC v. Safeco Ins. Co.*, No. 8:19-CV-528-T-36AAS, 2019 WL 8273657,

---

[8] Plaintiffs note that Defendant's arguments ignore certain "allegations supporting an implied covenant of good faith and fair dealing claim." (Dkt. 37 at 11–12 (quoting Dkt. 1 ¶¶ 182–185).) However, the allegations to which Plaintiffs point are not "separate factual allegations." *Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1297 (M.D. Fla. 2022).  Rather, they are "legal conclusions" that "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

at *8–9 (M.D. Fla. Dec. 16, 2019) ("Accordingly, because [the plaintiff's] claim for breach of the implied covenant of good faith and fair dealing is based on the same allegations underlying [the plaintiff's] breach of contract claim and therefore redundant, the claim is due to be dismissed."); *Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Cos.*, No. 8:06-CV-104T30MSS, 2007 WL 220172, at *7 (M.D. Fla. Jan. 26, 2007) (granting motion to dismiss claim for breach of the implied covenant of good faith and fair dealing without prejudice because it did not differ from the plaintiff's breach of contract count).

Next, Defendant argues that Plaintiff Ellert did not suffer any cognizable injury because he admits to receiving a free second battery. (Dkt. 33 at 13–15.) Plaintiff Ellert brings claims under the FDUTPA as well as for breach of contract. (Dkt. 1 at 31–33, 43–44.) An element of each of these claims is damages. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) ("The three elements of a consumer claim under [the] FDUTPA are: (1) a deceptive act or unfair practice[,] (2) causation[,] and (3) actual damages." (quotation omitted)); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) ("For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract[,] (2) a material breach of that contract[,] and (3) damages resulting from the breach."); *Grant*, 2021 WL 9594009, at *2 ("A claim for breach of contract under Florida law requires three elements: (1) the existence of a valid contract[,] (2) a material breach[,] and (3) damages.").

Actual damages under the FDUTPA "are measured according to the difference

in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (quotation omitted). "A plaintiff, however, cannot state a cause of action under [the] FDUTPA if the consumer fails to plead that they suffered actual damages." *Marrache*, 17 F.4th at 1098. Further, "the members of a putative class who experienced no actual loss have no claim for damages under [the] FDUTPA." *Id.* (alteration adopted and quotation omitted). The FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Id.* (quotation omitted).

Here, Defendant "advertised to consumers that they would receive a '[f]ree [seco]nd [b]attery' – consisting of a 'free second battery and battery end cap.'" (Dkt. 1 at 1.) *See Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *13 (S.D. Fla. June 30, 2022) (finding that damage was not adequately pled under the FDUTPA because "[w]hat was promised was a tank of gas at the credit price, and what was delivered was a tank of gas at the credit price"). At the time the complaint was filed, Plaintiff Ellert alleged that, though he had received the battery, he had "not received his battery end cap, which is necessary to utilize the battery in the [e]-[b]ike." (Dkt. 1 at 17.) *See Marrache*, 17 F.4th at 1099 (concluding that the FDUTPA claims failed to state a claim for actual damages because the plaintiff did not allege that he was unable to use the product). Accordingly, the end cap allegedly has more than nominal value—together the "second battery and battery end cap" were valued at $1,400. (Dkt.

1 at 4.) And no matter how much the end cap alone is valued at, it being necessary to utilize the battery in the e-bike "materially affects the value of the battery he received as part of the promotional offer." (Dkt. 33 at 15.) Thus, Plaintiff Ellert did not get "what he bargained for." (Dkt. 33 at 14 (alteration adopted and quotation omitted).)[9] Plaintiff Ellert further asserts that "he inquired with [Defendant] about rectifying this," but "he was answered with a pre-recorded message and then his calls were disconnected." (Dkt. 1 at 17.) *See Marrache*, 17 F.4th at 1099 (noting that the plaintiff did not allege that he "unsuccessfully sought a refund for or complained" of the product to the defendants). Thus, at this stage, Plaintiff Ellert adequately alleges actual damages. *See Martorella*, 931 F. Supp. 2d at 1225 (denying a motion to dismiss a FDUTPA claim because the plaintiff adequately alleged actual damages as the difference between "the premiums under her homeowners' policy" and "the payment which [the d]efendants allegedly assessed against her wrongfully").

## CONCLUSION

Accordingly:

1. Defendant's motion to dismiss (Dkt. 33) is **GRANTED in part and DENIED in part** as follows:

   a. Counts II–V and VII are **DISMISSED without prejudice**.

---

[9] Defendant disagrees because the battery end cap is "a small piece of plastic that is included with the original bike and battery, and which can be used with the second battery as well." (Dkt. 33 at 14–15.) Even if that is the case, in deciding a motion to dismiss for failure to state a claim, the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Accordingly, at this stage, it is not necessary that Plaintiff Ellert "explain[ t]his vague assertion." (Dkt. 33 at 15.)

b. The motion to dismiss is otherwise **denied**.

2. Plaintiffs' motion (Dkt. 52) is **DENIED**.

3. Plaintiffs Tosin Adesina, Aaron Dombeck, George Doukas, and Chad Whitaker's claims against Defendant are **DISMISSED without prejudice**.

4. The Clerk is **DIRECTED** to terminate Adesina, Dombeck, Doukas, and Whitaker as parties in this case.

5. On or before May 21, 2026, Plaintiffs may file an amended complaint that fully complies with this order.

**ORDERED** in Orlando, Florida, on April 29, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

- 29 -