**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO. 6:25-CV-01588-JSS-DCI**

| | |
|---|---|
| Charles Ellert, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>YAMAHA MOTOR CORPORATION, U.S.A.<br><br>Defendant. | CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Charles Ellert ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Amended Class Action Complaint against Defendant Yamaha Motor Corporation, U.S.A. ("Yamaha" the "Company," or "Defendant") and alleges, based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters based upon, *inter alia*, the investigation of counsel, as follows:

## NATURE OF THE ACTION

1. This is a simple case of consumer deception. Beginning in December 2023, and in later advertisements, including in or around August 2024, Yamaha advertised to consumers that they would receive a "Free 2nd Battery" – consisting of a "free second battery and battery end cap" – if they purchased one of seven applicable Yamaha e-bikes or Power Assist Bicycles. The free second battery and battery end cap is identical and functions the same regardless of which of the

applicable e-bikes are purchased. Examples of these advertisements include:[1]
















[1] In addition to the Free 2nd Battery, Yamaha's promotion also included an extended five (5) year limited factory warranty and was coupled with significant discounts off the e-bikes Manufacturer's Suggested Retail Prices.

2. The promotion of the Free 2nd Battery was a material and significant inducement to drive consumers to purchase Yamaha's qualifying E-Bikes. In fact, depending upon the E-Bike purchased, the value of the Free 2nd Battery, including battery end cap, which Yamaha stated in its advertisements was $1,400.00, exceeded that of the E-Bike's purchase price.

3. The promotion of a free component item, such as the Free 2nd Battery advertised by Yamaha here, with the purchase of a qualifying product within a specified period of time is well understood by the American public: in the event the qualifying product is purchased within the applicable time period, the consumer would expect to receive the Free 2nd Battery at no additional cost. But, in many cases, that is not what happened with Yamaha's Free 2nd Battery promotional offer.

4. In many cases, Yamaha told consumers who purchased a qualifying product within the applicable time period that they will not be receiving the Free 2nd Battery.

5. Yamaha's excuses for failing to honor its promotional offer have varied. Yamaha has told some purchasers that the promotion was always "While Supplies Last" despite not including that disclaimer in many of its advertisements of the Free 2nd Battery promotion. Yamaha has told other purchasers that they would not be receiving the Free 2nd Battery because their E-Bike's warranty was not registered on or before October 21, 2024, an arbitrary cutoff date and qualifying event that was not included in any advertisements of the Free 2nd Battery promotion. When responding to Better Business Bureau Complaints, Yamaha provided contradicting representations about whether it would or could deliver Free 2nd Batteries, while also stating multiple times that the inability to provide qualifying customers a Free 2nd Battery was "a fluid situation and [Yamaha] will strive to accommodate all customers but do apologize to those who remain disappointed."

6. Yamaha's Free 2nd Battery promotion was deceptive to reasonable consumers, such as Plaintiff, who expected that by purchasing the qualifying E-Bike during the promotional period, they would receive the Free 2nd Battery.

7. Yamaha's failure to honor the Free 2nd Battery as advertised is, among other things, an unfair and deceptive trade practice in violation of state consumer protection laws.

8. Yamaha's failure to honor the Free 2nd Battery promotional offer also constitutes a breach of contract and of the implied covenant of good faith and fair dealing, and Yamaha has been unjustly enriched by its conduct.

9. As more fully detailed below, Plaintiff acted upon Yamaha's promotional offers and purchased an E-Bike, which Yamaha promised would include a Free 2nd Battery, within the applicable time period and reasonably expected that Yamaha would deliver the Free 2nd Battery in accordance with the terms stated in the promotional offer, to wit: "Upon completion of the warranty registration, a free second battery and battery end cap ($1,400 value) will be shipped to the registered owners at no additional charge."

*10.* However, prior to initiating this lawsuit, Plaintiff had not received a Free 2nd Battery because Yamaha never sent him the end cap it promised to send as part of the Free 2nd Battery promotion and which is necessary for the battery to work with any and all of the qualifying E-Bike's, including the E-Bike purchased by Plaintiff. Rather, it was only after and as a direct consequence of Plaintiff filing this lawsuit that Yamaha sent Plaintiff not one but two battery end caps – the first one through Yamaha's counsel and the second from Yamaha directly. *(Composite Exhibit A)*

11. As a result of Yamaha's deceptive and unfair conduct, breach of contract, including the implied covenant of good faith and fair dealing, and ill-gotten gains, Plaintiff and members of

the classes (defined below) have suffered damages by not receiving the Free 2nd Battery they were promised would be delivered by purchasing a qualifying E-Bike during the applicable time period.

12. Because of the relatively small amount of damages suffered by Plaintiff and each class member, a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure is the only mechanism that defrauded consumers have to obtain redress for their damages and to put a stop to Yamaha's unlawful conduct.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because Plaintiff is of diverse citizenship from Yamaha, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

14. The Court has personal jurisdiction over Yamaha because Yamaha has purposefully availed itself of the privilege of conducting business activities in the State of Florida, and the actions related to Plaintiff's purchase of the subject E-bike occurred in Florida.

15. Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Yamaha has marketed, advertised, and sold the qualifying E-Bikes and Free 2nd Battery's via its online website and through its authorized dealers in this District, and Yamaha has caused harm to Plaintiff and other class members who reside in this District.

## PARTIES

16. Plaintiff Charles Ellert is a citizen and resident of the State of Florida.

17. Defendant Yamaha is an American multinational corporation organized and existing under the laws of the State of California with its principal place of business in Cypress, California. Yamaha has historical connections with Yamaha Motor Corporation, a global

manufacturing conglomerate based in Japan that is a world leader in manufacturing motors, motorcycles and other motor-based modes of transportation under the Yamaha brand name. Yamaha has been manufacturing E-Bikes for thirty (30) years and, according to its website, "pioneered the first e-Bike back in 1993."

## FACTUAL ALLEGATIONS

### I. The Federal Trade Commission's Guidance on the Use of the Word "Free"

18. The Federal Trade Commission ("FTC" or "Commission") has long been concerned about businesses using the term "free" in marketing or promotional materials, because that word, which frequently attracts consumers, can easily lead to deception.

19. Accordingly, over 50 years ago, the FTC published its **"FTC GUIDE CONCERNING USE OF THE WORD 'FREE' AND SIMILAR REPRESENTATIONS."** 36 FR 21517, Part 251 (Nov. 10, 1971) (the "FTC Guide"), which explained, in relevant part:

> (a) General. (1) The offer of "Free" merchandise or service is a promotional device frequently used to attract customers. Providing such merchandise or service with the purchase of some other article or service has often been found to be a useful and valuable marketing tool.
>
> (2) Because the purchasing public continually searches for the best buy, and regards the offer of "Free" merchandise or service to be a special bargain, ***all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived***. Representative of the language frequently used in such offers are "Free", "Buy 1-Get 1 Free", "2-for-1 Sale", "50% off with purchase of Two", "1 Sale", etc. . . .
>
> (b) ***Meaning of "Free"***. (1) ***The public understands that***, except in the case of introductory offers in connection with the sale of a product or service (See paragraph (f) of this section), ***an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free". In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, the word "Free" indicates that he is paying nothing for that article and no more than the regular price for the other. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the***

> ***substitution of inferior merchandise or service, or otherwise.***
>
> (2) The term regular when used with the term price, means the price, in the same quantity, quality and with the same service, at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a "Free" or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30-day period. For consumer products or services which fluctuate in price, the "regular" price shall be the lowest price at which any substantial sales were made during the aforesaid 30-day period. Except in the case of introductory offers, if no substantial sales were made, in fact, at the "regular" price, a "Free" or similar offer would not be proper.
>
> (c) Disclosure of conditions. When making "Free" or similar offers all the terms, ***conditions and obligations upon which receipt and retention of the "Free" item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood***. Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of "Free" merchandise or service. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset. However, mere notice of the existence of a "Free" offer on the main display panel of a label or package is not precluded provided that (1) the notice does not constitute an offer or identify the item being offered "Free", (2) the notice informs the customer of the location, elsewhere on the package or label, where the disclosures required by this section may be found, (3) no purchase or other such material affirmative act is required in order to discover the terms and conditions of the offer, and (4) the notice and the offer are not otherwise deceptive. . . .

36 FR 21517, §§251.1(a)-(c) (emphasis added).

20. Thus, it is clear that the FTC proscribes – in no uncertain terms – Yamaha from failing to deliver the Free 2nd Battery to any customer who purchased a qualifying E-Bike within the time prescribed by Yamaha's promotion.

21. Nearly all state consumer protection laws, including Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (*see* FLA. STAT. §501.204(2)), provide that courts are to give due consideration and weight to the FTC's interpretation of the Federal Trade Commission Act.

## II. Yamaha's Deceptive Free 2nd Battery Promotion to Induce Consumers to Purchase Its Oversupplied E-Bike's

22. Yamaha "pioneered the first e-Bike in 1993."

23. Since that time, until the end of 2024, Yamaha sold E-Bike's to consumers in the United States through its extensive network of authorized dealers and third-party retailers.

24. Following the COVID-19 pandemic, the popularity of E-Bikes initially soared amongst consumers in the United States – as did the number of entrants competing against Yamaha to sell them.

25. To meet the post COVID-19 demand, Yamaha substantially increased its production and supply of E-Bikes available for purchase in the United States.

26. Unfortunately for Yamaha, the increased demand for E-Bikes waned, leading to an oversupply of Yamaha's E-Bike inventory.

27. It is against this backdrop that Yamaha came to offer the Free 2nd Battery promotion.

28. Beginning on December 1, 2023, Yamaha began offering "Up to $800 OFF" the listed price on various model E-Bikes purchased between December 1, 2023, and August 31, 2024, plus a "Free 2nd 500 lithium-ion battery" and an extended five-year limited factory warranty.

29. With respect to the free second battery, the initial promotion clarified in fine print denoted by an "**" that "Upon completion of the warranty registration and new owner's survey, a free second battery and battery end cap ($1,400 value) will be shipped directly to the registered owner at no additional charge." Below is an example of this promotional offer:



https://yamaha-motor.com/promotions
4 captures
24 Jul 2024 - 16 Jan 2025

YAMAHA

Shop | Parts | Maintenance | Inside Yamaha | Find a Dealer

Promotions | yamaha motor corporation, U.S.A.

# Promotions

## THE YAMAHA BICYCLES EXTRAVAGANZA!

### Up to $800 OFF listed price on select models!

Customer Cash offer good on the following models purchased between December 1, 2023 and August 31, 2024.

- $800 customer cash on Wabash RT
- $500 customer cash on YDX-MORO Pro, YDX-MORO, and CrossCore RC
- $200 customer cash on YDX-MORO 07 and YDX-MORO 05.

### FREE 2nd 500Wh lithium-ion battery

Free 2nd battery promotion applies to new customers that purchased a YDX-MORO 07 SE, YDX-MORO 07, YDX-MORO PRo, YDX-MORO 05, YDX-MORO, CrossCore RC, or Wabash RT between December 1, 2023 and August 31, 2024. Upon completion of the warranty registration and new owner's survey, free 2nd battery ($1,400 value) will be shipped to the registered owners at no charge.

### Extended limited warranty to FIVE years!

Five-year factory limited warranty applies to drive unit, battery, and frame and rigid fork for all models that are warranty-registered on or after December 1, 2023

Professional rider depicted on closed course. Model specifications subject to change. Review the Owner's Manual, instructions material and product warning labels before operation. Ride safely, and always dress properly with a helmet and appropriate protective clothing. Ride responsibly and respect the environment. Observe all state and local laws and regulations. Never ride under the influence of alcohol or other drugs. ©2024 Yamaha Motor Corporation, USA. All rights reserved. Offer subject to change.

### FREE SHIPPING FOR PARTS, GEAR AND ACCESSORY ORDERS OVER $100

(the "Initial Promotion").

30. Some advertisements promoted the Free 2nd Battery offer between December 1, 2023 and December 31, 2024:



31. Other than the foregoing requirement for completing a warranty registration and new owner's survey, neither of which Yamaha required to be done within any time period, the Initial Promotion did not contain any preconditions other than the purchase of a qualifying model within the specified timeframe.

32. In or around August 2024, despite still being within the timeframe covered by the Initial Promotion, Yamaha sweetened the incentives by substantially increasing the customer cash discount on its E-Bike models.

33. Specifically, in addition to the Free 2nd battery and extended warranty, Yamaha began offering up to $2,599 in customer cash depending upon the model of the E-Bike being purchased:






(the "Updated Promotion").

34. For the Updated Promotion and Free 2nd Battery, Yamaha continued to require a warranty registration but eliminated the new owner survey and did not add any other qualifications for receipt of the Free 2nd Battery.

35. With the substantial increase in customer cash added to the Free 2nd Battery and extended warranty, the Updated Promotion quickly became very popular and spread across the internet.

36. By early September 2024, comment forums referencing the Updated Promotion began to appear on high-visibility websites such as Slickdeals, Reddit and Electric Bike Forums.

37. The threads created on these and other websites extol the quality of the promotion, of which the Free 2nd Battery was a significant part, *e.g.*, "Yamaha has insane ebike deals right now" (r/cycling on Reddit, 9/11/24); "Amazing deals at Yamaha currently…and they include a second battery!" (Electric Bike Forums, 9/8/24); "Yamaha is having a 60 percent off sale…If you need a road or emtb, this seems too good to be true" (r/ebikes on Reddit, 9/8/24); "Yamaha ditching

stock at ½ price event going on now!" (EMTB Forums, 9/7/24).[2]

38. By mid-October 2024, questions arose regarding the availability of batteries and/or Yamaha's ability to fulfill the Free 2nd Battery promotion.

39. On or around October 15, 2024, a third-party Yamaha authorized dealer, ebikes508, stated on its website that the Free 2nd Battery promotion will end on all bikes purchased after October 19, 2024.

40. Upon information and belief, in or around the third week of October, Yamaha similarly communicated with dealers and customers that they were either running low on or were out of batteries available to fulfill the Free 2nd Battery promotional offer.

41. For example, one customer was told by a Yamaha dealer that all extra batteries available at the time of the Updated Promotion were gone as of October 21, 2024.

> I was finally able to pick up my Crosscore today, and when I asked the salesman about the extra battery and steps to receive it, he told me that his contact at Yamaha had informed him that as of Monday all the extra batteries were gone, and not to expect a battery if you hadn't picked up your bike and registered it before Monday. Pretty disappointing news! Has anyone else heard the same?[3]

42. Another dealer advised a customer that the official end date for registration to qualify for the Free 2nd Battery was October 22, 2024.

> I asked about the batteries. (He actually brought it up first, sounds like they are getting a lot of calls on batteries.) He said the official end date for registration (assuming showing in their system) to qualify for the battery was 10/22. He stated that they are as supplies last and he can't guarantee it. Hopefully I just squeaked in. I guess

---

[2]https://www.reddit.com/r/cycling/comments/1fe7vxx/yamaha_has_insane_ebike_deals_right_now/; https://forums.electricbikereview.com/threads/amazing-deals-at-yamaha-currently.56636/; https://www.emtbforums.com/threads/yamaha-ditching-stock-at-1-2-price-event-going-on-now.39937/; https://www.reddit.com/r/ebikes/comments/1fbo82a/yamaha_is_having_a_60_percent_off_sale/.

[3]https://www.reddit.com/r/Yamahaebikes/comments/1gbb8u4/extra_battery_promo_ended_according_to_dealership/.

I'll find out in 120 days or less...[4]

43. Other customers called Yamaha directly and were told by Yamaha that the cutoff to receive the Free 2nd Battery was registration by October 21, 2024.[5]

44. Another customer was advised by Yamaha that the Free 2nd Battery will no longer be sent when Yamaha's stock of promotional batteries runs out, which Yamaha advised was independent from its regular stock of batteries.

45. Some customers filed complaints against Yamaha with the Better Business Bureau ("BBB"); Yamaha's responses have been wildly inconsistent,[6] representing all of the following:

> We apologize to the consumer for any frustration he has experienced relating to our Yamaha Fan Rewards promotion. With the promotion, customers received an exceptional 60% off, plus a free extended 5-year warranty and a 2nd battery was Offered as a bonus gift while supplies lasted. It was a great offer, and we were thrilled by how many people took advantage of it.
>
> Due to extremely high demand, the limited supply of the 2nd batteries allocated for the promotion was quickly claimed, and the stipulation of while supplies last was always a part of the promotions terms and conditions on our web site. Because of unexpected delays in shipping lithium-ion batteries, it is taking us longer than we anticipated. We are delighted, however, to be able to inform Mr. ****** that his battery has been dispatched and he should receive it shortly.
>
> We're grateful he took part in the promotion and is part of our Yamaha community. If theres anything else he ever needs especially regarding warranty support were here for him.
>
> ******
>
> We apologize to the consumer for his disappointment in our Yamaha Fan Rewards Promotion. With that promotion, customers received an exceptional 60% off, plus a free extended 5-year warranty — and a 2nd battery was offered as a bonus gift while supplies lasted. It was a great offer, and we were thrilled by how many people took advantage of it.

---

[4] *Id.*

[5] https://www.reddit.com/r/Yamahaebikes/comments/1g93357/yamaha_no_longer_advertising_free_extra_battery/?share_id=3bPuilphJHJ5FV8taLonW&utm_content=1&utm_medium=ios_app&utm_name=ioscss&utm_source=share&utm_term=1.

[6] https://www.bbb.org/us/ca/cypress/profile/motorcycle-supplies/yamaha-motor-corporation-usa-1126-33458/complaints?page=1.

Due to extremely high demand, the limited supply of the 2nd batteries allocated for the promotion was quickly claimed. While I know that can be disappointing, the offer included the condition that the part was only available while supplies lasted.

We still have batteries in our inventory, but those are strictly reserved for warranty service needs only. So, if a consumer's product experiences a qualifying issue, their 5-year warranty will absolutely cover it. But those parts are no longer available as promotional items.

We totally understand this may not be the news the consumer was hoping for, and we really appreciate their understanding. It's important to us to honor the full value of what they received — especially the long-term protection that comes with their extended 5-year warranty.

We're grateful they took part in the promotion and are part of our Yamaha community. If there's anything else they ever need especially regarding warranty support — we're here for them.

******

Due to the shipping regulations and packaging requirements of a lithium-ion battery, is it (sic) taking longer than the originally quoted 120 days for some of our customers to receive their bonus batteries and end caps, and we do continue to strive to fulfill these requests. While it is extremely doubtful that this consumer will receive a free bonus battery due to the vehicle being warranty registered with a purchase date near the end of our Yamaha Fan Rewards promotion, we have his information on file and will inform him should the situation change.

******

Due to our limited supply, bicycles that were purchased and/or warranty registered toward the end of the final promotion period may not receive the second battery. We would like to accommodate as many customers as we can with the extra battery and will continue to distribute them while supplies last.

******

We apologize to the consumer for any miscommunication or confusion regarding our Ebike promotion. While an exact date is not known at this time, we continue to allocate additional batteries to customers who purchased qualifying Ebikes during the promotional period and anticipate that our available supply may be exhausted when it comes to vehicles warranty registered in mid-October.

Although the terms and conditions specified that the free second battery promotion was limited to available stock, we are making every effort to supply batteries for as many qualifying units as quickly as possible. We are dispatching batteries every day and ask for everyone's patience while we process these requests.

******

Again, we are very sorry that we may not be able to accommodate all customers who purchased a ********************* Dower Assist Ebike during our deep discount promotion with a free second battery. When we had such an overwhelming response to the promotion we added a disclaimer to the Terms and Conditions online stating that the batteries would be provided while supplies lasted. This remainsa fluid situation and we will strive to accommodate all customers but do apologize to those who may remain disappointed.

Yamaha Motor Corporation, U.S.A.

46. In or around this time and consistent with customer feedback regarding having not received their Free 2nd Battery, Yamaha added a "while supplies last" disclaimer to some of its advertisements for the Free 2nd Battery promotion:




47. However, other advertisements of the Free 2nd Battery Promotion without the "while supplies last" disclaimer remained on Yamaha's website.

48. In the months that followed the Free 2nd Battery Promotion, some qualifying customers who were initially told by Yamaha that they would not be receiving the Free 2nd Battery did receive one, while others still have yet to receive a Free 2nd Battery contrary to the Free 2nd

Battery promotion and Yamaha's promise.

## III. The Experience of Plaintiff, Charles Ellert, and Other Class Members

49. In or around mid-to-late September 2024, Plaintiff became aware of the Free 2nd Battery promotion.

50. Plaintiff then proceeded to visit Yamaha's website to purchase a 2024 Yamaha Wabash RT and was provided with the following receipt:



[redacted]

**Thanks for your order!**
1 message

**Yamaha Motor** <reply@email.yamaha-motor.com> Sat, Oct 12, 2024 at 4:58 PM
Reply-To: Yamaha Motor <reply-2S77RCEUXDJENDVUTWFNRDSYNA.130003@email.yamaha-motor.com>
To: crle@sovereign.net

Order # o7799975

**LET THE ADVENTURE BEGIN**

Thank you for shopping with Yamaha Motor. Your order information is below. We'll also email you with any order updates.

[redacted] [redacted]

| | |
|---|---|
| **Charles Ellert** | **Credit Card** |
| 9334 E COLONIAL DR | 1869 PINE BAY DR |
| ORLANDO, FL | LAKE MARY, FL |
| 328174130, US | 32746, US |

YOUR ORDER #o7799975

**WABASH RT**
**$1,694.00**
1 item

| | | |
|---|---|---|
| **SUBTOTAL** | $1,694.00 | **ORDER TOTAL** |
| **SHIPPING** | $0.00 | **$1,804.11** |
| **TAX** | $110.11 | |

[redacted]

Need help or have questions? Contact Yamaha support and we'll get back to you soon.

This email was sent to crle@sovereign.net.
Please do not reply to this email as this address is not monitored.

(*Exhibit B*).

51. Prior to purchasing his 2024 Yamaha Wabash RT, Plaintiff reviewed the Free 2nd Battery promotional offer on Yamaha's website and saw that Yamaha was offering a "FREE 2nd Battery" on select models, including the Wabash RT:




52. After viewing Yamaha's promise to provide a free second battery and battery end cap, which Yamaha valued at $1,400.00, Plaintiff accepted the promotional offer by purchasing the Wabash RT.

53. The Wabash RT E-bike was delivered to Plaintiff's local Yamaha dealer on or about October 26, 2024, and was subsequently registered with Yamaha on or about November 8, 2024.

54. Plaintiff relied on Yamaha's Free 2nd Battery representation in deciding to purchase his Wabash RT E-bike, and thus, Plaintiff purchased the qualifying E-bike on the reasonable, but mistaken, belief that he would receive a Free 2nd Battery as part of his purchase.

55. Plaintiff would not have purchased the Wabash RT E-Bike had he known that Yamaha would not provide him with a Free 2nd Battery.

56. Although Plaintiff recently received a battery from Yamaha, prior to filing suit, Plaintiff had not received his battery end cap, which is necessary to utilize the battery in the E-Bike.

57. When he inquired with Yamaha about rectifying this, he was answered with a pre-recorded message and then his calls were disconnected, and Yamaha has not, otherwise, provided Plaintiff all that Yamaha promised.

58. It was only after filing this action, and as a direct result thereof, that Yamaha finally delivered to Plaintiff the battery end cap *(Composite Exhibit A)*. First, in an obvious "pick off" attempt, Yamaha's counsel mailed to Plaintiff from its California office an "END CAP" sourced from China, as indicated on the Country of Origin (COO) notation on the label:




59. Second, in or around January 2026, Yamaha mailed a second battery end cap directly to Plaintiff. *Id.*

60. The post-lawsuit delivery of not one but two battery end caps to Plaintiff, including one sourced from China, despite previously ignoring Plaintiff, undermines Yamaha's disingenuous "while supplies last" justification for not delivering the Free 2nd Battery as promised.

61. Consumers around the country have reported similar experiences in online message boards about not receiving a Free 2nd Battery despite purchasing a qualifying E-Bike and registering it. For example, one consumer stated:

> I bought 3 moros on the promotion. When we call we always get told we will receive a call back from a supervisor of some sort. They dont call back.[7]

[7] https://www.reddit.com/r/yamahanobattery/comments/11542oe/yamaha_contact/

62. Another consumer commented:

> Called yamaha today [Feb. 26, 2025]. Oct 21st registration. They said I won't be getting a battery. I thought I read in one of the posts that as long as you registered on Oct 21st or earlier that we would be getting one. Guess not.[8]

63. Another customer put together his own draft complaint and stated:

> On February 13th, Yamaha Motors Corporation has confirmed their failure to me to perform on our agreed upon contract. My bike was registered 10/22 as a point of reference to all of you out there… Yamaha. Must. Pay. We can not sit by and let this corporation steam roll us and scam us out of what is rightfully ours. I used to like this company, which is part of the reason I bought this bike to begin with... but to hell with the executives that made the decision to cut people off but continue their deceptive practices. These batteries exist out there, as many people have heard from reps about a large January shipment, myself included. Yamaha is just being a cheap ass about getting them shipped here to NA. They promised, they need to deliver.[9]

64. Having felt cheated by Yamaha, some qualifying customers have contacted their state's attorney general, initiated successful chargebacks in the amount of the value of the Free 2nd Battery as stated by Yamaha, filed fraud claims with the Federal Trade Commission and/or filed small claims' actions against Yamaha.[10] Others have taken their fight to the BBB. *See supra* at ¶ 45.

65. And while some qualifying customers have received their Free 2nd Battery despite being told repeatedly by Yamaha that they would not be receiving it, Yamaha's fulfillment for

---

8 https://www.reddit.com/r/yamahanobattery/comments/1iyu7e5/called_yamaha_today_oct_21st_registration_they/

9 https://www.reddit.com/r/yamahanobattery/comments/1iozqg0/draft_complaint_for_your_use/

10 https://www.reddit.com/r/yamahanobattery/comments/1kbj6x4/anyone_filed_in_small_claims_court_yet_any/

these customers reveals the falsity of its previous representations that its Free 2nd Battery stock had been depleted or that its offer was "while supplies last."

66. Accordingly, Yamaha's nationwide scheme has deprived qualifying customers millions of dollars by failing to deliver on its promise of a Free 2nd Battery with the purchase of a qualifying E-Bike.

## CLASS ALLEGATIONS

67. Plaintiff brings this action as a class action pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of himself and all others similarly situated as members of the following classes:

> All persons or entities in the United States (including its Territories and the District of Columbia) that purchased a qualifying Yamaha E-bike from Yamaha or authorized Yamaha dealers and were not provided with a Free 2nd Battery after registering their qualifying E-Bike (the "Nationwide Class"); and
>
> All persons or entities residing in Florida that purchased a qualifying Yamaha E-bike from Yamaha or authorized Yamaha dealers and were not provided with a Free 2nd Battery after registering their qualifying E-Bike (the "Florida Class") (collectively, the "Classes").

68. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Classes are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action,

and any member of the Judge's immediate family as well as any of Plaintiffs' counsel.

69. Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

70. ***Numerosity.*** Rule 23(a)(1) of the Federal Rules of Civil Procedure: The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain many tens or hundreds of thousands of members. The precise number of Class members is unknown to Plaintiff but may be ascertained from Yamaha's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

71. ***Commonality and Predominance.*** Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. Whether Yamaha committed a deceptive or unfair trade practice in violation of consumer state laws by the acts and practices complained of herein;

b. Whether Yamaha's Free 2nd Battery promotional offer and Plaintiff's acceptance of and payment for the E-bikes created a contract;

c. Whether Yamaha breached the implied covenant of good faith and fair dealing within every contract by failing to honor the Free 2nd Battery it advertised with the purchase of a qualifying E-Bike;

d. Whether Yamaha has been unjustly enriched by failing to honor the Free

2nd Battery it advertised with the purchase of a qualifying E-Bike;

e. Whether Plaintiff and the Classes are entitled to damages, and the proper measure of damages;

72. ***Typicality.*** Rule 23(a)(3) of the Federal Rules of Civil Procedure: Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Yamaha's wrongful conduct as described above. All claims seek recovery on the same legal theories and are based upon Yamaha's common course of conduct.

73. ***Adequacy***. Rule 23(a)(4) of the Federal Rules of Civil Procedure: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

74. ***Declaratory Relief.*** Rule 23(b)(2) of the Federal Rules of Civil Procedure: Yamaha has acted or refused to act on grounds generally applicable to Plaintiff and Class members, thereby making appropriate declaratory relief, with respect to the Classes as a whole.

75. ***Superiority***. Rule 23(b)(3) of the Federal Rules of Civil Procedure: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Yamaha, so it would be impracticable for Class members to individually seek redress for Yamaha's wrongful conduct. Even if Class members could afford individual litigation,

the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

76. ***Particular Issues.*** Rule 23(c)(4) of the Federal Rules of Civil Procedure: The Classes may be certified for certain issues, including:

a. Did Yamaha commit an unfair and deceptive trade practice by inducing Plaintiff and the Classes to purchase a qualifying Yamaha E-Bike based on the promise to deliver a Free 2nd Battery?

b. Are Plaintiff and the Classes "consumers" entitled to protection under the consumer protection laws of Florida?

c. Does Yamaha's Free 2nd Battery promotional offer and Plaintiff's acceptance and payment constitute an enforceable contract?

d. Did Yamaha breach the implied covenant of good faith and fair dealing incorporated into all contracts by failing to honor the Free 2nd Battery it advertised with the purchase of a qualifying E-Bike?

e. Was Yamaha unjustly enriched with ill-gotten gains obtained as a result of its promotional offer with regard to the Free 2nd Battery?

77. Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

78. Damages may be calculated from the data maintained in Defendant's records, so that the cost of administering a recovery for the Classes can be minimized. The precise amount of

damages available to Plaintiff and the other members of the Classes are not a barrier to class certification.

## CAUSES OF ACTION

### COUNT I
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (FLA. STAT. §501.201, *et seq.*)
### On Behalf of the Florida Class

79. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

80. Plaintiff Charles Ellert brings this claim on behalf of himself and the Florida Class.

81. Plaintiff and the Florida Class members are "consumers" within the meaning of FLA. STAT. §501.203(7).

82. Yamaha is engaged in "trade" or "commerce" within the meaning of FLA. STAT. §501.203(8).

83. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.204(1).

84. In the course of its business, Yamaha violated FDUTPA by knowingly misrepresenting and/or intentionally concealing material facts regarding the Free 2nd Battery promotion. Specifically, in marketing, offering for sale, and selling its qualifying E-Bikes, Yamaha engaged in one or more of the following unfair or deceptive acts or practices prohibited by FLA. STAT. §501.204(1):

(a) representing that the purchasers would receive a Free 2nd Battery with a value of $1,400.00 at no additional cost, inclusive of both a battery and battery end cap;

(b) advertising the qualifying E-Bikes with the intent not to deliver the Free 2nd Battery, including both a battery and/or battery end cap, as advertised;

(c) engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

(d) using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of its qualifying E-Bikes.

85. Yamaha's Free 2nd Battery promotion was material to Plaintiff and the Florida Class, and Yamaha misrepresented, concealed, or failed to disclose its intent to not to deliver on its promise with the intention that Plaintiff and the Florida Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the Florida Class would not have purchased their respective qualifying Yamaha E-Bikes.

86. Plaintiff and the Florida Class members had no way of discerning that Yamaha's representations were false and misleading, or otherwise learning the facts that Yamaha had concealed or failed to disclose.

87. Yamaha had an ongoing duty to Plaintiff and the Florida Class members to refrain from unfair and deceptive practices under FDUTPA in the course of its business. Specifically, Yamaha owed Plaintiff and the Florida Class members a duty to disclose all the material facts concerning the availability of its Free 2nd Battery and its intent not to honor its promise to deliver the Free 2nd Battery with the purchase of a qualifying E-Bike because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiff and the Florida Class

members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

88. Plaintiff and the Florida Class members suffered ascertainable loss and actual damages as a direct and proximate result of Yamaha's concealment, misrepresentations, and/or failure to disclose material information.

89. Pursuant to FDUTPA, Plaintiff and the Florida Class seek monetary relief against Yamaha in the amount of actual damages, attorneys' fees, and any other just and proper relief available under the FDUTPA

**COUNT II**
**Breach of Contract**
**On Behalf of the Classes**

90. Plaintiff realleges and incorporates by reference the preceding allegations at paragraphs 1 – 89 as though fully set forth herein.

91. Plaintiff brings this claim on behalf of himself and the Classes.

92. Plaintiff and Class members entered into materially similar Contracts with Yamaha when they accepted the terms of Yamaha's Free 2nd Battery promotional offer by paying for the qualifying E-Bike. The Terms and Conditions set forth in Yamaha's Free 2nd Battery promotional offer are, therefore, binding on both Yamaha and all Class members, including Plaintiffs.

93. Yamaha breached its Contracts with Plaintiffs and the Classes by failing to honor the Free 2nd Battery promotional offer, including failing to provide the Free 2nd Battery as promotionally offered and accepted by Plaintiffs and the Classes.

94. As a direct and proximate result of Yamaha's breach, Plaintiff and Class members have been damaged by not receiving the Free 2nd Battery they were promised would be delivered by purchasing a qualifying E-Bike during the applicable time period.

**COUNT III**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**On Behalf of the Florida Class**

95. Plaintiff realleges and incorporates by reference the preceding allegations at paragraphs 1 – 89 as though fully set forth herein.

96. Plaintiff brings this claim on behalf of himself and the Florida Class.

97. There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

98. The implied covenant of good faith and fair dealing requires each party to the contract to be honest in its dealings and not purposefully take actions that would unfairly prevent other parties from enjoying their rights or benefits under the contract or disappoint their reasonable expectations.

99. The implied covenant of good faith and fair dealing further requires that even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith and observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

100. Good faith and fair dealing, in connection with entering into contracts and discharging performance and other duties according to their terms, means preserving the spirit not merely the letter-of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract(s) in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

101. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, or abuse of a power to specify terms and interference with or failure to cooperate in the other party's performance

102. Under the express terms of the Free 2nd Battery with the purchase of a qualifying E-Bike promotion advertised by Yamaha, Plaintiff and the Florida Class members were to benefit through Yamaha's delivery of a Free 2nd Battery, while Yamaha was supposed to benefit through consumers' payment for the qualifying E-Bikes.

103. Yamaha exhibited bad faith through its conscious scheme to offer a Free 2nd Battery and then not delivering it to qualifying customers.

104. Specifically, to avoid its contractual obligation to deliver a Free 2nd Battery to Plaintiff and the Florida Class Members, Yamaha engaged in subterfuge, evasion and/or bad faith by representing to them: that the contract was subject to a "while supplies last" disclaimer when it was not; that supplies of the Free 2nd Battery had been exhausted when they had not; that the supplies of the Free 2nd Battery which Yamaha did have were for warranty purposes only and therefore excluded from the Free 2nd Battery promotion; that they had to have purchased the qualifying E-Bike by a date prior to the deadline advertised in the promotion; and/or that they had to register their qualifying E-Bike by a date certain when there was no such obligations to do so.

105. In making the foregoing representations to avoid its contractual obligation to deliver the Free 2nd Battery, Yamaha breached the implied covenant of good faith and fair dealing.

106. Plaintiff and members of the Florida Class suffered damages and losses as described herein.

107. The damages and losses sustained by Plaintiff and members of the Florida Class are the direct and proximate result of Yamaha's breaches of the covenant of good faith and fair dealing implied in the Free 2nd Battery promotion.

**COUNT IV**
**Unjust Enrichment**
**On Behalf of the Classes**

108. Plaintiff realleges and incorporates by reference the preceding allegations at paragraphs 1 – 89 as though fully set forth herein.

109. Plaintiff brings this claim on behalf of himself and the Classes.

110. Yamaha has been, and continues to be, unjustly enriched, to the detriment and at the expense of Plaintiff and members of the Classes, as a result of its conduct directed against Plaintiff and the Classes as a whole, including the collection of money from consumers for the purchase of qualifying E-Bikes who were promised the delivery of a Free 2nd Battery from Yamaha but did not receive the Free 2nd Battery.

111. Yamaha has been unjustly benefitted through the unlawful or wrongful collection of money from the sale of qualifying E-Bikes without delivering the promised Free 2nd Battery to the purchasers and continues to benefit to the detriment and at the expense of Plaintiff and members of the Classes.

112. Accordingly, Yamaha should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and members of the Classes, who seek disgorgement of Yamaha's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seek restitution for the benefit of Plaintiff and the Classes, in an equitable and efficient fashion as the Court deems just and proper.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes,

respectfully request the Court certify the proposed Classes, including designating Plaintiff as a representative of the Classes and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiff's favor and against Yamaha including the following relief:

A. Awarding actual and consequential damages;

B. Awarding any applicable statutory damages;

C. For pre- and post-judgment interest to the Classes;

D. For reasonable attorneys' fees and costs to counsel for the Classes; and

E. Granting such other and further relief as is just and proper.

## V. DEMAND FOR JURY TRIAL

113. Plaintiff and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), of all issues so triable.

Dated: May 21, 2026

Respectfully submitted,

/s/ *Geoffrey Stahl*
Geoffrey Stahl *(Fla. Bar No.: 89240)*
Rachel Bentley *(Fla. Bar No.: 106870)*
**GORDON & PARTNERS, PA**
4114 Northlake Lake Blvd.
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 366-1485
GStahl@fortheinjured.com
RBentley@fortheinjured.com

Joshua Zipper *(Fla. Bar No.: 45247)*
**Shapiro Blasi Wasserman Hermann, PA**
7777 Glades Rd Ste 400
Boca Raton, FL 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722
jzipper@sbwh.law